IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DUNCAN ROUND, et al.,

     Plaintiffs,

  v.

CITY OF PHILADELPHIA, et al.,

     Defendants.

CIVIL ACTION
NO. 19-3513

## OPINION

**Slomsky, J.**                     **May 1, 2020**

## TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 3

II.  BACKGROUND ...................................................................................................... 3

III.  STANDARD OF REVIEW ...................................................................................... 10

IV.  DISCUSSION .......................................................................................................... 12

 A. The Two Claims Against the Philadelphia Police Department and Philadelphia DHS
   in Counts VI and VII Will Be Dismissed.......................................................... 12

 B. The Two Claims Against the City of Philadelphia in Counts VI and VII
   Will Be Dismissed ........................................................................................... 13

  1. Count VI Will Be Dismissed Because the City of Philadelphia Did Not Issue
    the Removal Order ..................................................................................... 15

  2. Count VII Will Be Dismissed Because It Does Not State a <u>Monell</u> Claim Against
    the City of Philadelphia .............................................................................. 16

 C. All Claims Against Police Commissioner Richard Ross, Jr. Will Be Dismissed ............. 21

  1. All Section 1983 Claims Against Ross Will Be Dismissed Because
    the Amended Complaint Does Not Allege His Personal or Supervisory
    Involvement in the Alleged Constitutional Violations ................................................ 21

2.    All Supplemental State Law Claims Against Ross Will Be Dismissed
Pursuant to 28 U.S.C. § 1367 ........................................................................ 23

D.    The Claim Against Suzann Morris in Count VI Will Be Dismissed................................ 23

V.    CONCLUSION .................................................................................................................. 28

## I.     INTRODUCTION

Plaintiffs Duncan Round and Kirsten Round bring this suit against various institutional and individual defendants for alleged violations of their constitutional rights stemming from Duncan Round's arrest for sexual assault of two minors, and the removal of children from Sprouts Day Care Center, a childcare center owned and operated by Plaintiffs.  In their Amended Complaint, Plaintiffs assert that Defendants committed several constitutional violations, triggering civil liability under 42 U.S.C. § 1983, and two supplemental Pennsylvania state law claims.

Before the Court are two Motions to Dismiss.  The first was jointly filed on October 16, 2019, by the City of Philadelphia and former Police Commissioner Richard Ross, Jr. (Doc. No. 8). The second was filed on November 12, 2019 by Suzann Morris.[1]  (Doc. No. 21.)  For reasons that follow, the Court will grant both Motions in their entirety and Plaintiffs' claims against the City of Philadelphia, Police Commissioner Richard Ross, Jr., and Suzann Morris will be dismissed.  The Court will also dismiss <u>sua</u> <u>sponte</u> all claims against the Philadelphia Police Department and Philadelphia Department of Human Services because these entities are not subject to suit under Section 1983.

## II.    BACKGROUND

Plaintiff Duncan Round[2] and his wife, Plaintiff Kirsten Round, owned and operated Sprouts Day Care Center ("Sprouts"), a childcare center located in Philadelphia, Pennsylvania.  (Doc. No. 6 at 6.)  Sprouts opened in 2007 and operated until the events that led to the filing of this lawsuit. (<u>Id.</u>)

---

[1]    Suzann Morris was the Deputy Secretary of the Pennsylvania Department of Human Services.

[2]    All references in this Opinion to "Plaintiff" or "Round" will refer to Duncan Round.

In July 2015, Colin and Heather Shearn enrolled at Sprouts their two children, a brother and sister who are five-year-old twins ("A.S." and "C.S.," respectively).  (Id. at 7.) The children's tenure was unremarkable until June 2017, when Heather Shearn contacted Plaintiffs and claimed that one of her children had fractured an arm while at the daycare center and demanded $5,000 in restitution.[3]   (Id.)   Plaintiffs did not believe the allegation, considered the demand to be extortionate, and refused to pay the requested amount.  (Id.)

On July 24, 2017, about one month later, Heather Shearn contacted the Philadelphia Department of Human Services ("Philadelphia DHS") and complained that two Sprouts employees, including Plaintiff, had sexually assaulted her children.  (Id.)   The next day, Philadelphia DHS Investigator Jenifer Klepsky, Philadelphia Police Officer Toni Madgey, and Colleen Getz of the Philadelphia Children's Alliance interviewed Heather Shearn, Colin Shearn, A.S., and C.S.  (Id.)  According to Plaintiffs, A.S. and C.S.'s statements to Klepsky, Madgey, and Getz were contradictory, inconsistent, and in some circumstances, verged on the absurd.[4]  (Id. at 7-9.)  Plaintiffs also contend "the circumstances clearly suggested the mother was coaching her children."  (Id. at 8.)  Apparently, Getz, in her interview notes, raised some concern about the credibility of the children's statements.  (Id. at 9.)

The investigation quickly expanded.  A.S. and C.S. underwent an evaluation at the Children's Hospital of Philadelphia ("CHOP"), and the Philadelphia Police Department conducted a search of the premises of Sprouts Day Care Center.  (Id. at 9-10.)  It seems that neither avenue

---

[3]   The Amended Complaint does not specify which child allegedly suffered the injury.  (See Doc. No. 6 at 7.)

[4]   Plaintiffs allege that during the interviews the "allegations were inconsistent about who was abused, the identify of the abusers, where the abuse occurred, who was present during the abuse, and what actually occurred[.]"  (Doc. No. 6 at 8.)  Plaintiffs aver that C.S. stated that the abuse occurred while she was at a museum with her parents and brother.  (Id.)

of investigation yielded evidence of wrongdoing by Round.  According to Plaintiffs, A.S. and C.S's examinations at CHOP yielded no evidence of physical trauma associated with sexual assault (see id. at 9), nor did the search of Sprouts provide any evidence that would implicate Round (see id. at 10).  In fact, while semen was found in the bathroom at Sprouts, subsequent testing by the Philadelphia Police Department's Office of Forensic Science excluded Round and all other Sprouts employees as the source.  (Id.)

The following day, Philadelphia DHS Investigator Klepsky interviewed the other Sprouts employee accused of sexual assault.  (Id. at 10.)  During that interview, the other employee denied any wrongdoing and told Klepsky that C.S. had made false allegations of sexual and physical abuse in the past.  (Id. at 11.)  Klepsky interviewed at least five other Sprouts employees and none of them produced any evidence of wrongdoing by Round.  (Id.)

On July 28, 2017, Officer Madgey filed a criminal complaint against Round.  (Id. at 11.) According to Plaintiffs, the criminal complaint was filed before the Office of Forensic Science issued their findings.  (Id.)  Additionally, Plaintiffs allege that Madgey's affidavit of probable cause, which supported the criminal complaint, was based solely on the statements of A.S., C.S., and Heather Shearn.  (Id.)

After the criminal complaint was filed, Magistrate Judge Jane Rice issued a warrant for Rounds' arrest.  (Id. at 13.)  On August 2, 2017, he voluntarily surrendered to the Philadelphia Police Department and was charged with rape of a child, involuntary deviate sexual intercourse with a child, and several other felony and misdemeanor offenses.  (Id. at 14.)  Philadelphia Police Officer William Brophy was the arresting officer.  (Id.)  Next, on August 3, 2017, Suzann Morris, Deputy Secretary of the Pennsylvania Department of Human Services ("Pennsylvania DHS"),

issued an order (the "Removal Order")[5] pursuant to 55 Pa. Code § 20.37[6] removing all children

from the Center, which had the practical effect of closing Sprouts Day Care indefinitely.[7]  (Id. at

14.)  It appears Plaintiffs did not avail themselves of their right to appeal the Removal Order,

including the right to further administrative and judicial review.  (See Doc. No. 21-2.)

On August 30, 2017, a preliminary hearing was held before Judge James Murray Lynn in

the Philadelphia Court of Common Pleas.  (Doc. No. 6 at 14.)  During the hearing, A.S. and C.S.

testified.  (Id.) According to Plaintiffs, their testimony was inconsistent with prior statements made

---

[5]   The Removal Order states, in pertinent part:

And now this 3rd day of August 2017, pursuant to 55 Pa. Code § 20.37, the Commonwealth of Pennsylvania, Department of Human Services, hereby determines that the conditions existing at:

Sprouts Preschool
604 South 9th Street
Philadelphia, PA 19147-2028

As described in Attachment A, constitute gross incompetence, negligence and misconduct in operating a facility likely to constitute immediate and serious danger to the life or health of the children in care.

Accordingly, the Department hereby orders that all children be removed from the facility forthwith.

(Doc. No. 21-2 at 2.)

[6]   55 Pa. Code § 20.37 states, in pertinent part:

If the Department finds evidence of gross incompetence, negligence, misconduct in operating the facility or agency, or mistreatment or abuse of clients, likely to constitute an immediate and serious danger to the life or health of the clients, the Department will take immediate action to remove the clients from the facility or agency.

55 Pa. Code § 20.37.

[7]   In their filings, Plaintiffs refer to the Removal Order as a "shutdown order." (See e.g., Doc. No. 24-1 at 12.)  While the Removal Order may have had the practical effect of closing Sprouts, in substance it is a removal order.

6

to investigators.  (Id.)  Plaintiffs claim that A.S. stated that nothing inappropriate had ever happened between him and Round.  Moreover, C.S. alleged that she was abused by Round both at school and at her parent's house, and that, incredibly enough, her parents, Heather and Colin Shearn, witnessed the alleged abuse.  (Id.)

Over the next few months, the Philadelphia Police Department and the Philadelphia DHS[8] continued to investigative the claims against Round.  Officers Madgey and Ferrell interviewed other Sprouts employees and parents of other children enrolled at Sprouts.  (Id. at 15.)  According to Plaintiff, "all those interviewed denied that [he] was ever engaged in inappropriate behavior with any children, including A.S. and C.S."  (Id.)

On January 16, 2019, the Philadelphia District Attorney's Office filed a motion to dismiss the criminal case against Plaintiff.  (Id. at 16.)  The motion was granted by Judge Glynnis Hill. (Id.)  Round later filed a petition for expungement, which was consented to by the Philadelphia District Attorney's Office.  (Id.)  Sprouts, however, remains closed indefinitely pursuant to Pennsylvania DHS's Removal Order, dated August 3, 2017.  (Id.)

On August 2, 2019, Plaintiffs initiated this federal case by filing a Complaint (Doc. No. 1) against the following eight Defendants: (1) the City of Philadelphia, (2) the Philadelphia Police Department, (3) Police Commissioner Richard Ross, Jr., (4) Officer William Brophy, (5) Officer Toni Madgey, (6) Officer Carol Farrell, (7) Philadelphia DHS, (8) Deputy Secretary Suzann Morris, and (9) Philadelphia DHS Investigator Jenifer Klepsky.  (Id. at 1-2.)  After the City of

---

[8]   It is unclear how Philadelphia DHS and Pennsylvania DHS interact in a situation involving an allegedly abused child.  Neither party had described the nature of the relationship.  Moreover, although the Court is bound by the allegations in the Amended Complaint, there is a concern that Plaintiffs may be conflating Philadelphia DHS and Pennsylvania DHS throughout. Despite this concern, the Court will rely on the Amended Complaint and refer to Philadelphia DHS in the Background section, unless a conflation is evident by authentic exhibits or publicly available documents that the Court is permitted to consider on a motion to dismiss.

Philadelphia and Police Commissioner Richard Ross, Jr. filed their initial motion to dismiss (Doc. No. 2), Plaintiffs filed an Amended Complaint (Doc. No. 6), which is the operative pleading.[9]

In the Amended Complaint, Plaintiffs name the same Defendants and assert the following seven claims:

> Count I:  Unlawful arrest under 42 U.S.C. § 1983 against all individual Defendants;

> Count II:  A supplemental state law claim for false imprisonment against all individual Defendants;

> Count III:  Unjustified search under 42 U.S.C. § 1983 against all individual Defendants;

> Count IV:  Malicious Prosecution under 42 U.S.C. § 1983 against all individual Defendants;

> Count V:  A supplemental state law claim for malicious prosecution against all individual Defendants;

> Count VI:  Deprivation of Property Interest without Due Process under 42 U.S.C. § 1983 against all Defendants;[10] and

> Count VII:  A Monell claim under 42 U.S.C. § 1983 against the Philadelphia Police Department, the Philadelphia Department of Human Services and the City of Philadelphia.

(Id. at 19-26.)

On October 16, 2019, the City of Philadelphia and Police Commissioner Richard Ross, Jr. filed a Second Motion to Dismiss for Failure to State a Claim.  (Doc. No. 8.)  In their Motion, the City of Philadelphia and Ross argue that Plaintiffs' Amended Complaint lacks sufficient factual allegations to support the claims against them.  (Id. at 3.)  First, it is evident that neither the City nor Ross issued the Removal Order which is the basis of the Count VI due process claim against

---

[9]   On October 2, 2019, the Court denied the initial motion to dismiss without prejudice as moot. (Doc. No. 7.)

[10]   Although not titled as such, Count VI is a Monell claim because it asserts a claim under 42 U.S.C. § 1983 against the City of Philadelphia.  Count VII is also a Monell claim.

them.  Second, City argues that Plaintiffs' <u>Monell</u> Claim in Count VII must be dismissed because the Amended Complaint did not include factual averments of an unconstitutional policy, custom or practice—nor an endorsement of an unconstitutional policy, custom or practice by a municipal policymaker—which are both required to establish a <u>Monell</u> claim.  (<u>Id.</u> at 5-9.)  Instead, according to the City, Plaintiffs simply set forth a series of conclusory allegations that paraphrased the elements of a <u>Monell</u> claim.  (<u>Id.</u>)  Ross argues that Plaintiffs' claims against him must be dismissed because there is no vicarious or supervisory liability under 42 U.S.C. § 1983 and the Amended Complaint does not assert that he was personally involved in the alleged violations.  (<u>Id.</u> at 9-10.)

On October 28, 2019, Plaintiffs filed a Response (Doc. No. 18), arguing that the Amended Complaint contains sufficient factual content to permit a reasonable inference of liability against the City and Ross.  They claim that Ross is a policymaker who endorsed the City's unconstitutional policies as the ultimate supervisor of the police and contend that this endorsement constitutes the personal involvement needed to establish liability.  (<u>See</u> <u>generally</u>, Doc. No. 18-1.)

On November 12, 2019, Suzann Morris filed her Motion to Dismiss.  (Doc. No. 21.)  At the time, Morris was named as a Defendant in Counts I through VI, and in the Motion she sought dismissal of all six Counts.  Plaintiffs, however, filed a Notice of Voluntary Dismissal (Doc. No. 23) on December 10, 2019, dismissing Counts I through V against her.  Therefore, at present, Morris is named only in the due process claim in Count VI.  Morris argues that she must be dismissed as a Defendant because she is entitled to qualified immunity.  (Doc. No. 21-1 at 9-13.)

On December 10, 2019, Plaintiffs filed a Response in Opposition to Morris's Motion to Dismiss.  (Doc. No. 24.)  In the Response, Plaintiffs assert that "Defendant Suzann Morris is not entitled to qualified immunity on the Due Process claim related to issuing the order to shut down [S]prouts."  (Doc. No. 24-1 at 9-15.)  Plaintiffs provide a lengthy explanation of their due process

claim, arguing generally that they have a property interest in operating Sprouts and that the process they were afforded did not provide due process of law because they could not "meaningfully dispute the allegations [in the Removal Order] until the criminal proceeding against Plaintiff Duncan Round concluded."  (Id. at 13.)  Morris filed a Reply on December 17, 2019.  (Doc. No. 25.)  On January 24, 2020, the Court held a hearing on Defendants' Motions to Dismiss during which the parties recited their respective positions.  (See Doc. No. 27.)

For reasons that follow, the Court will dismiss Plaintiffs' claims against the City of Philadelphia, the Philadelphia Police Department, Philadelphia DHS, Police Commissioner Richard Ross, Jr., and Suzann Morris.

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this

Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

When determining whether a claim is plausible, a district court may also consider any affirmative defenses raised by the moving party.  "Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Fed. R. Civ. P. 12(b)).  However, the so-called "Third Circuit Rule" allows affirmative defenses to be raised in a 12(b)(6) motion.  Id.; see also Ball v. Famiglio,

726 F.3d 448, 459 n.16 (3d Cir. 2013) <u>cert.</u> <u>denied</u>, 134 S. Ct. 1547 (U.S. 2014) ("[A] number of affirmative defenses that are not listed in Rule 12(b) [can] still be made by motion, provided that the basis of the defense [is] apparent on the face of the complaint."); <u>Bethel v. Jendoco Const. Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978) ("[A]n affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint.").  For instance, "qualified immunity may be raised in a motion to dismiss at the pleading stage[.]" <u>Eddy v. Virgin Islands Water & Power Auth.</u>, 256 F.3d 204, 210 n.3 (3d Cir. 2001).

## IV.   DISCUSSION

### A.   The Two Claims Against the Philadelphia Police Department and Philadelphia DHS in Counts VI and VII Will Be Dismissed

As an initial matter, the Court will dismiss the claims against the Philadelphia Police Department and Philadelphia DHS, which are named Defendants in Counts VI and VII.  (Doc. No. 6.)  These entities are part of the City of Philadelphia—which is the proper Defendant—and therefore cannot be sued.

Under Pennsylvania law,

> [N]o such department shall be taken to have had, since the passage of the act to which this is a supplement, a separate corporate existence, and hereafter all suits growing out of their transactions, and all claims to be filed for removing nuisances, together with all bonds, contracts and obligations, hereafter to be entered into or received by the said departments, shall be in the name of the city of Philadelphia.

53 P.S. § 16257.  In accordance with this statute, "[t]he Third Circuit has explained that, for purposes of section 1983 liability, [a] municipality and [its] department['s] are treated as a single entity." <u>Brown v. Cohen</u>, No. 09-2909, 2011 U.S. Dist. LEXIS 57330, at *10 (E.D.Pa. Apr. 21, 2011) (citing <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 n. 4 (3d Cir. 1997)).  Thus, the Philadelphia Police Department and Philadelphia DHS, which are departments of the City of

Philadelphia, are not amenable to suit. See e.g., Gremo v. Karlin, 363 F. Supp. 2d 771, 780-81 (E.D. Pa. 2005) (citing Baldi v. City of Philadelphia, 609 F. Supp. 162, 168 (E.D. Pa. 1985)) (dismissing a Section 1983 claim against the Philadelphia Police Department "because it does not have a separate corporate existence"); Ali Abu Lumumba v. Philadelphia Dep't of Human Servs., No. 98-5195, 1999 U.S. Dist. LEXIS 7904, at *7-8 (E.D.Pa. May 21, 1999) (concluding that Philadelphia "DHS is not [a] legal entity which can be sued."). Consequently, Plaintiffs' claims against the Philadelphia Police Department and Philadelphia DHS will be dismissed as a matter of law. As noted, the City of Philadelphia, which has been sued in this case, is the properly named Defendant.

### B. The Two Claims Against the City of Philadelphia in Counts VI and VII Will Be Dismissed

In Counts VI and VII of the Amended Complaint, Plaintiffs allege the City of Philadelphia violated their rights under the Fourteenth Amendment, and the Fourth and Fourteenth Amendments, respectively. (Doc. No. 6.) The City argues these claims should be dismissed because Plaintiffs fail to plead facts plausibly establishing the elements of municipal liability. (Doc. No. 8.) The Court agrees.

Plaintiffs raise their claims against the City pursuant to 42 U.S.C. § 1983. (Doc. No. 6.) Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.[11]

In <u>Monell v. Department of Social Services</u>, the United States Supreme Court held that municipal entities can be subject to Section 1983 liability in limited circumstances. 436 U.S. 658, 690 (1978). Under <u>Monell</u>, to state a Section 1983 claim against a municipality, a plaintiff must establish that (1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference. <u>Id.</u> at 694-95; <u>Andrews v. City of Philadelphia,</u> 895 F.2d 1469, 1480 (3d Cir. 1990). When lodging a <u>Monell</u> claim based on policy or custom, the complaint must sufficiently "link the alleged offending policies or customs to anyone . . . who had policy-making authority." <u>Rees v. Office of Children and Youth,</u> 473 Fed. App'x 139, 143 (3d Cir. 2012).

The gravamen of <u>Monell</u> and its progeny is that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered." <u>Pembaur v. City of Cincinnati,</u> 475 U.S. 469, 480 (1986). In other words, the constitutional deprivation must have its origin in the policy or custom of the municipality, and liability based on the actions of city officials exists only where it can be shown that the officials acted in accordance with that policy or custom. <u>Monell</u>, 436 U.S. at 694. Accordingly, municipalities cannot be held liable under Section 1983 for the acts of its employees based on the doctrine of <u>respondeat</u> <u>superior</u> or for other forms of vicarious liability. <u>Monell</u>, 436 U.S. at 692 (noting that the language of Section 1983 "cannot easily be read to impose liability vicariously on government bodies solely on the basis of the existence of an employer-employee

---

[11] Importantly, Section 1983 does not create substantive rights. Instead, it is a statutory mechanism that allows persons to seek review of alleged state and local violations of federal law in federal court. In fact, the purpose of the statute "was to interpose the federal courts between the States and the people, as guardians of the people's federal rights[.]" <u>Mitchum v Foster</u>, 407 U.S. 225, 242 (1972).

relationship with a tortfeasor"); see also Reitz v. County of Bucks, 125 F.3d 139, 146 (3d Cir. 1997) ("[L]iability simply cannot be predicated upon a showing of respondeat superior.").

### 1. Count VI Will Be Dismissed Because the City of Philadelphia Did Not Issue the Removal Order

In Count VI of the Amended Complaint, Plaintiffs allege that the City of Philadelphia violated Section 1983 when it deprived them of their property interest in Sprouts without due process of law. They allege that they had a constitutionally protected property interest in Sprouts, which was improperly impinged upon when it ceased doing business as a result of the Removal Order. This argument, however, is without merit because Pennsylvania DHS issued the Removal Order, not the City of Philadelphia.

Plaintiffs' due process claim against the City fails because they conflate Philadelphia DHS with Pennsylvania DHS. In the Amended Complaint, Plaintiffs state that "[o]n August 3, 2017, [the] Philadelphia Department of Human Services recklessly and without cause issued an Order closing down Sprouts Preschool indefinitely . . . [and] Sprouts Preschool remains closed to date pursuant to that Order." (Doc. No. 6 at 14.) Count VI charges the City with violating Plaintiffs' due process rights by issuing the Removal Order. (See id. at 24-26.) However, Pennsylvania DHS—not Philadelphia DHS—issued the Removal Order in accordance with its authority under 55 Pa. Code § 20.37.[12] (See Doc. No. 21-2.) As a result, Plaintiffs' claim against the City for

---

[12] In deciding whether Plaintiffs have pled a claim upon which relief may be granted, the Court "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). Extrinsic evidence is usually not relevant to a motion to dismiss. "However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations and quotations omitted). Therefore, in addition to the Amended Complaint, the Court will consider the Removal Order issued by the Pennsylvania Department of Human Services on August 3, 2017, which is attached to Defendant Suzann Morris's Motion to Dismiss (Doc. No. 21-2). The

violating their due process rights is not viable.  The City cannot be held liable for an order it did not issue.  Thus, the City of Philadelphia will be dismissed as a Defendant in Count VI.

### 2.   Count VII Will Be Dismissed Because It Does Not State a <u>Monell</u> Claim Against the City of Philadelphia

In Count VII of the Amended Complaint, Plaintiffs attempt to bring another <u>Monell</u> claim against the City of Philadelphia.  They allege that Round was arrested without probable cause in violation of the Fourth and Fourteenth Amendments.  (Doc. No. 6 at 26-27.)  They further argue that these violations are systemic, and reflect the policy or custom of the City—thereby opening the City up for suit under Section 1983—because it has "maintained for many years a recognized and accepted policy, custom and/or practice of . . . failing to properly investigate criminal matters before filing charges[.]"  (<u>Id.</u>)  They also contend that the City is liable under Section 1983 for "remaining deliberately indifferent" to the resulting abuses and "failing to properly train . . . its officers, agents, and/or investigators . . . regarding the appropriate procedures for protecting the constitutional rights of individuals[.]"  (<u>Id.</u> at 27-28.)

In their Motion to Dismiss, the City argues that Count VII must be dismissed because the Amended Complaint does not allege facts that establish the second prong of a <u>Monell</u> claim, which requires a showing that the alleged violations resulted from a municipal policy, custom, or the deliberate indifference of the City.  The City contends that the Amended Complaint is deficient in this regard for two reasons. First, the Amended Complaint does not sufficiently assert an unconstitutional policy, custom or practice.  (Doc. No. 8 at 5.)  Second, and in the alternative, the Amended Complaint does not state that a municipal policymaker endorsed the allegedly unconstitutional policy or custom.  (<u>Id.</u>)  The Court will consider each of the City's arguments in

---

Removal Order is reviewable under either the exception for public records or the exception for an integral document that the claims are based upon.

turn, and for reasons that follow, concludes that Plaintiffs did not sufficiently plead a <u>Monell</u> claim in Count VII.

> ### a.    The Amended Complaint Does Not Allege A Municipal Policy, Custom, or Deliberate Indifference

First, in this case, Count VII must be dismissed because Plaintiffs have not pled sufficient facts to establish that a municipal policy or custom was the cause of the alleged constitutional violations.   To plead a <u>Monell</u> claim, a plaintiff must allege sufficient facts showing that a municipal policymaker established a policy or custom that was the moving force behind the constitutional violation experienced.  <u>See Monell</u>, 436 U.S. at 694.  The Third Circuit has explained that a policy is made when a decisionmaker with final authority to establish municipal policy issues an official proclamation, policy, or edict.  <u>Wright v. City of Philadelphia</u>, 685 Fed. Appx. 142, 146 (3d Cir. 2017) (citing <u>Andrews v. Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Custom, however, is not specifically endorsed or authorized by law. <u>Id.</u> Rather, custom results from policymakers' "acquiescence in a longstanding practice or custom, which constitutes the 'standard operating procedure' of the local government entity."  <u>Id.</u> (quoting <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989).

There are numerous ways a plaintiff can sufficiently allege the existence of a municipal policy or custom needed to establish a <u>Monell</u> claim.  For example, a plaintiff can cite the official policy.  <u>See Monell</u>, 436 U.S. at 690 (stating that a municipality may be sued under Section 1983 when it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").  Alternatively, a plaintiff can make specific reference to "multiple incidents" implicating a particular custom.  <u>See Harris v. City of Philadelphia</u>, 171 F. Supp.3d 395, 401-02 (E.D. Pa. 2016) (finding a custom where there were "multiple incidents" of police officers using reckless and excessive force in their use of batons).

17

A plaintiff can also establish custom by conducting a statistical analysis of lawsuits against a municipality for a violation of a particular constitutional right.  See Simpson v. Ferry, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (permitting a Monell claim to proceed following a review of the plaintiff's statistical analysis about the number of lawsuits brought against the Philadelphia Police Department for use of excessive force).

It is insufficient, however, for a plaintiff to merely state the "phraseology" of an alleged policy or custom if the allegations are unaccompanied by supporting facts.  Saleem v. Sch. Dist., No. 12-3193, 2013 U.S. Dist. LEXIS 152740, at *9 (E.D. Pa. Oct. 24, 2013) (explaining that pleadings that are "bereft of any assertions of relevant facts," containing only the "plaintiff's bare allegations . . . are insufficient to show his entitlement to relief.").  Conclusory and general claims that simply paraphrase Section 1983 will not satisfy federal pleading requirements because they "fail[] to satisfy the 'rigorous standards of culpability and causation' required to state a claim for municipal liability."  Wood v. Williams, 568 F. App'x 100, 104 (3d Cir. 2014) (quoting McTernan, 564 F.3d at 658-59).

In this case, the Amended Complaint's bare and conclusory allegations are insufficient to state a claim under Monell.  Aside from the City's alleged conduct surrounding Round's investigation and arrest, the Amended Complaint is devoid of any facts suggesting that the City has a policy or custom of arresting citizens without probable cause.  The allegations in the Amended Complaint concern only Plaintiffs' alleged experience.  Absent some showing of comparable instances evidencing a pattern, the Court cannot conclude that Plaintiffs' allegations reflect a larger policy or custom.  It is an untenable stretch to extrapolate from an isolated accusation involving Plaintiff alone that his allegations reflect a City practice.

Second, to the extent Plaintiffs attempt to establish a custom based upon a theory that the City was deliberately indifferent to systemic Fourth and Fourteenth Amendment abuses, this attempt fails, too.[13]  In certain circumstances, a municipality may be liable under Section 1983 when it decides "not to train certain employees about their legal duty to avoid violating citizens' rights," Connick v. Thompson, 563 U.S. 51, 61 (2011), and this failure "amount[s] to 'deliberate indifference' to the rights of persons with whom the [untrained employees] come into contact," Id. (quoting City of Canton, 489 U.S. at 388).[14]  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (quoting Brown, 520 U.S. at 409).

The Third Circuit considers the following factors in determining whether the deliberate indifference standard is met:

> (1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

Estate of Roman, 914 F.3d at 798 (quoting Doe v. Luzerne Cty., 660 F.3d 169, 180 (3d Cir. 2011)).

---

[13]  Plaintiffs' factual allegations in the Amended Complaint are primarily focused on alleging an unconstitutional policy or custom.  But in Count VII, Plaintiffs make several buzzword-laden averments, including conclusory statements that the City's failed to train its officers appropriately.  (Doc. No. 6 at 27-28.)  For this reason, the Court also will consider whether the Amended Complaint states a Monell claim against the City for failing to train its officers.

[14]  The idea behind the failure-to-train theory is that when "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick, 563 U.S. at 61 (citing Brown, 520 U.S. at 407).  A city's "policy of inaction" in the face of such notice is functionally equivalent to a decision to violate the Constitution and thus, in effect, becomes the city's custom.  Id. at 61-62.

In the Amended Complaint, Plaintiffs' provide no facts to support any of these three factors. Other than conclusory allegations that the City was "deliberately indifferent to the systemic abuses which occurred in accordance with and as a direct and proximate result of the . . . [unconstitutional] practice," (Doc. No. 6 at 28), Plaintiffs proffer no facts to support an inference that the City was on notice that it has failed to train its officers to handle known, constitutionally-difficult circumstances involving investigations of sexual assault of children.  As a result, Plaintiffs have not properly alleged that the City of Philadelphia has a custom of deliberate indifference. Accordingly, for all the above reasons, Count VII will be dismissed.

### b.   The Amended Complaint Does Not Allege Involvement of a Municipal Policymaker

Even if Plaintiffs sufficiently pled the existence of a municipal policy or custom, their Monell claim still fails because it does not even allege that a municipal policymaker was aware of the municipal policy or custom at issue.  A plaintiff seeking to establish municipal liability under Section 1983 "must show that an official who has the power to make policy is responsible for either the affirmative affirmation of a policy or acquiescence in a well-settled custom."  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews, F.2d at 1480).  To classify an individual as a municipal policymaker, a plaintiff must show they possess "final, unreviewable discretion to make a decision or to take an action."  Andrews, 895 F.2d at 1481.  Absent identification of such a "decisionmaker possess[ing] final authority to establish municipal policy," a plaintiff cannot establish as a matter of law that a municipality should be subject to liability under Section 1983.  Id. at 1480.

Plaintiffs argue that the allegedly unconstitutional policies were issued by a policymaker because the Philadelphia Police Department's Manual of Directives—which contains the Department's rules, policies, and procedures—is issued by the Police Commissioner.  (Doc. No.

18 at 16.)   Plaintiffs allege that Ross, as Police Commissioner, "approved," "endorsed" and "implement[ed]" the official policy.  However, to establish liability under <u>Monell</u>, Plaintiffs must do more than simply note that the Philadelphia Police Department does, in fact, employ an official policymaker.  Instead, they must show that a policymaker knew about or directed the allegedly unconstitutional policy or custom.  That has not been shown here.

In the Amended Complaint, Plaintiffs cite no policy and, more specifically, do not cite to any portion of Philadelphia Police Department's Manual of Directives.  As a result, the fact that the Police Commissioner issues these policies provides no support to Plaintiffs' claim that a policymaker endorsed a policy of arresting persons without probable cause.  Furthermore, to the extent that Plaintiffs' claim relies on the proposition that the City of Philadelphia has a particular unconstitutional custom, they fail to allege the existence of a policymaker responsible for that custom.  Without a policymaker tied to the conduct underlying the alleged harm, Plaintiffs' claim against the City of Philadelphia in Count VII is untenable at best.

### C.    All Claims Against Police Commissioner Richard Ross, Jr. Will Be Dismissed

#### 1.    All Section 1983 Claims Against Ross Will Be Dismissed Because the Amended Complaint Does Not Allege His Personal or Supervisory Involvement in the Alleged Constitutional Violations

Counts I, III, IV, and VI of the Amended Complaint contain Section 1983 allegations against former Police Commissioner Richard Ross, Jr. based on his position of as the ultimate supervisor of Officers Brophy, Madgey, and Ferrell and as the Philadelphia Police Department's ultimate policymaker. (<u>See</u> Doc. No. 6 at 17.)   Ross contends that Plaintiffs' claims must be dismissed because there is no evidence that he was personally involved in the alleged violations and no evidence to assert supervisory liability against him.  (Doc. No. 8 at 9.)  The Court agrees.

To state a claim against a defendant in his individual capacity under Section 1983, a plaintiff must establish that the defendant had personal involvement in committing the alleged

violations.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor,

451 U.S. 527, 537 n.3 (1981)); see also Agresta v. City of Philadelphia, 801 F. Supp. 1464, 1468

(E.D. Pa. Aug. 11, 1992) (explaining that the liability of an individual officer must "be based on

his own acts or omissions, not those of [other] individual officers.").  Further, because there can

be no vicarious liability claims under Section 1983, the mere fact that a named defendant is in a

supervisory position is insufficient to establish liability.  Reaves v. Vaugh, No. 00-2786, 2001 U.S.

Dist. LEXIS 12186, at *4 (E.D. Pa. Aug. 10, 2001).

"A plaintiff can show the personal involvement of a supervisor through allegations of

personal direction or actual knowledge and acquiescence, so long as those allegations are made

with particularity."  Davenport v. City of Phila., No. 16-6397, 2018 U.S. Dist. LEXIS 183746, at

*18 (E.D. Pa. Oct. 26, 2018) (citing Rode, 845 F.2d at 1207).  Conclusory allegations and formulaic

recitations of law, however, are insufficient to establish that a supervisor was personally involved

in the deprivation of constitutional rights underlying a Section 1983 claim.  Santiago v. Warminster

Twp., 629 F.3d 121, 131 (3d Cir. 2010).

In the instant case, Plaintiffs fail to state a claim against Ross because they do not allege

that he was personally involved in committing the alleged constitutional violations.  Instead,

Plaintiffs rely entirely on Ross's supervisory position as the basis his liability.  The crux of

Plaintiffs' claims against Ross is that

> [t]he Philadelphia Police Departments [sic] policies[,] which are
> approved and endorsed by Police Commissioner Richard Ross, Jr. .
> . . contain no protection for an accused where the evidence is clear
> that the claims against the accused were baseless . . . because the
> policies do not in any way caution the police to ensure there is
> probable cause before making [ ] an arrest.   In this way,
> [Commissioner Ross] was implementing an official policy, custom
> or practice . . . that was carried out by the Defendant Officers."

(Doc. No. 18-1 at 16-17.)

But Plaintiffs do not allege any facts suggesting that Ross directed Officers Brophy, Madgey, or Ferrell to investigate or arrest Round.  They offer no facts that Ross even knew about the investigation or arrest of Round.  Without any showing that Ross was personally involved in the decision-making or in the events that led to Plaintiffs' alleged injuries, there is no claim under Section 1983.  Therefore, all Section 1983 claims against Ross will be dismissed.

### 2. All Supplemental State Law Claims Against Ross Will Be Dismissed Pursuant to 28 U.S.C. § 1367

In Counts II and V of the Amended Complaint, Plaintiffs bring state law claims against Ross for false imprisonment and malicious prosecution, respectively.  (Doc. No. 6.)  According to 28 U.S.C. § 1367(c)(3), a federal district court may "decline to extend supplemental jurisdiction" over a plaintiff's state law claims if the court has already dismissed all federal claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3).  Since the Court will dismiss Plaintiffs' federal claims against Ross, it will decline to extend jurisdiction over Plaintiffs' supplemental state law claims against him under § 1367(c)(3).  Consequently, Plaintiffs' state law claims against Ross will be dismissed.

### D. The Claim Against Suzann Morris in Count VI Will Be Dismissed

In Count VI—the only count in which Suzann Morris remains as a Defendant—Plaintiffs' claim that by issuing the Removal Order she deprived them of their property, Sprouts Day Care Center, in violation of their procedural and substantive due process rights under the Fourteenth Amendment.  Because Morris is cloaked with the affirmative defense of qualified immunity, this claim will be dismissed.

Under the doctrine of qualified immunity, government officials performing discretionary, non-prosecutorial functions are shielded from liability insofar as their conduct does not violate clearly established constitutional rights that a reasonable person would have known.  Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether a government official is entitled to qualified immunity, district courts must engage in a two-step analysis.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) (explaining the two-step analytical process for determining when qualified immunity has been overcome).  "First, a court must decide 'whether the facts that a plaintiff has … shown make out a violation of a constitutional right.'"  Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (alteration in original) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  "And second, the court must determine 'whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.'"  Id.  A district court has discretion to approach these steps in the sequential order that it deems "most appropriate for the particular case before [it]."  Santini v. Fuentes, 795 F.3d 410, 418 (3d Cir. 2015).  Failure to establish either step is fatal to an attempt to overcome the defense of qualified immunity.

Since the Court has discretion to perform the two-pronged qualified immunity analysis in the order it deems appropriate, Pearson, 555 U.S. at 236, it will proceed first with the "clearly established" inquiry.  As explained recently by the Third Circuit Court of Appeals,

> Qualified immunity's second prong "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Pearson, 555 U.S. at 231).
>
> "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citation omitted).  The inquiry is an "objective (albeit fact-specific) question," under which "[an officer]'s subjective beliefs . . . are irrelevant."  Anderson v. Creighton, 483 U.S. 635, 641 (1987). Because the inquiry is from the perspective of a reasonable officer, we "consider[] only the facts that were knowable to the defendant officer[]." White v. Pauly, 137 S. Ct. 548, 550 (2017) (citation omitted).

[ . . .]

> [I]n most cases, a plaintiff must show that a right is clearly established because "the violative nature of particular conduct [was] clearly established.'" <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1866 (2017) (quoting <u>Mullenix</u>, 136 S. Ct. at 308). In other words, "settled law," <u>Wesby</u>, 138 S. Ct. at 590, must "'squarely govern[]' the specific facts at issue," <u>see</u> <u>Kisela v. Hughes</u>, 138 S. Ct. 1148, 1152 (2018) (quoting <u>Mullenix</u>, 136 S. Ct. at 309).  The Supreme Court has explained that a plaintiff may satisfy this standard by "identify[ing] a case where an officer acting under similar circumstances as [the defendant officer] was held to have violated the [constitutional provision at issue]." <u>White</u>, 137 S. Ct. at 552.
>
> For qualified-immunity purposes, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" <u>Bland v. City of Newark</u>, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted); <u>see</u> <u>Wesby</u>, 138 S. Ct. at 589–90 ("To be clearly established, a legal principle must . . . [be] dictated by controlling authority or a robust consensus of cases of persuasive authority[.]" (citations and internal quotation marks omitted)).

<u>James v. N.J. State Police (In re Gibbons)</u>, No. 18-1432, 2020 U.S. App. LEXIS 12707, at *7-9 (3d Cir. Apr. 21, 2020).

When considering whether the constitutional right Plaintiffs' rely upon was clearly established, the Court is guided by the Third Circuit's direction to "first frame the precise contours of that right." <u>Spady</u>, 800 F. 3d at 638.  This requires the Court to "frame the right at issue in a [ ] particularized . . . sense . . . in light of the case's specific context[,]" <u>id.</u>, and determine whether "existing precedent . . . placed the statutory or constitutional question beyond debate," <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011).  In other words, district courts must determine whether "factually similar precedent exists that would have placed the defendant on notice that [her] specific conduct was constitutionally unlawful." <u>Johnston v. Wetzel</u>, No. 16-268, 2019 U.S. Dist. LEXIS 221856, at *14 (W.D.Pa. Dec. 27, 2019).

In the instant case, Plaintiffs' claims derive from the Fourteenth Amendment's due process clause, which provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.  Plaintiffs claim they were deprived of their Fourteenth Amendment procedural due process protections when the Removal Order was issued without prior notice, a hearing, or in exchange for just compensation.  (Doc. No. 6 at 25.) In addition, Plaintiffs claim that their Fourteenth Amendment substantive due process rights were violated because it was outrageous to issue the Removal Order without affording them the procedural protections under the due process clause.  (Id.)  Mindful, however, of the Third Circuit's direction to frame the right at issue in the case's specific context, the question before the Court for purposes of the "clearly established" inquiry is whether, at the time the Removal Order was issued, there was settled law that issuing a statutorily-authorized removal order following the arrest of an owner and operator of a daycare center for rape of a child and other regulatory violations contravene the owners' Fourteenth Amendment due process rights.

In their filings, Plaintiffs have not offered any relevant, context-specific precedent supporting their position.  They have not cited any law, albeit decisional or statutory, that would put Morris on notice that after her review of the facts she was not permitted to issue the Removal Order.  Instead, in their Response in Opposition to Morris' Motion to Dismiss (Doc. No. 24-1), Plaintiffs rely on an analysis of individual's property interest in their driver's license, welfare benefits, and state-funded public education.  (See id. at 9-11.)  Given the context-specific nature of the "clearly established" inquiry, these precedents do not provide the "robust consensus," Bland, 900 F.3d at 84, required to overcome qualified immunity.

Plaintiffs' inability to provide any supportive precedent is not surprising since this Court's independent search of case law from the Supreme Court, Third Circuit, and other circuit courts

reveals no such precedent.  Indeed, given the lack of precedent, Morris's actions were not only constitutionally compliant, but objectively reasonable.  Morris issued the Removal Order pursuant to 55 Pa. Code § 20.37.  That section states, in pertinent part,

> If the [Pennsylvania] Department [of Human Services] finds evidence of gross incompetence, negligence, misconduct in operating the facility or agency, or mistreatment or abuse of clients, likely to constitute an immediate and serious danger to the life or health of the clients, the Department will take immediate action to remove the clients from the facility or agency.

55 Pa. Code § 20.37.[15]

It is evident that Pennsylvania law supported Morris' emergency action.  When she issued the Removal Order, Morris was aware that Round had recently been arrested for "involuntary deviate sexual intercourse, unlawful contact with a minor, endangering the welfare of children, corruption of minors, indecent exposure, indecent assault, and recklessly endangering another person," (Doc. No. 21-2 at 3) (capitalization revised), against two five-year-old enrollees at Sprouts.  (See id.)  In addition, she was also presented with numerous childcare center regulatory violations, identified during inspections conducted by the Southeastern Region Office of Child Development and Early Learning.[16]  (See id.)  These facts would constitute "negligence . . . [or]

---

[15]   In fact, since Plaintiffs opted not to challenge at all the Removal Order in state court, they forfeited their due process rights afforded them under state law.  See Zinermon v. Burch, 494 U.S. 113 (1990) (dismissing a plaintiff's 1983 claim after finding that a state's statutory post-deprivation appeal process constituted due process); Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (stating that there is no due process violation when "procedural protection['s] [were] available and the plaintiff has simply refused to avail himself of them.").

[16]   According to the Removal Order's Attachment, the Southeastern Region Office of Child Development and Early Learning inspected Sprouts on July 26, 2017 and July 27, 2017.  (Doc. No. 21-2 at 2.)  Those inspections revealed numerous regulatory violations, including that "the basement door, which led to hazards, was not closed and locked," and "an upstairs window was open and without a screen."  (Id. at 3-4.)

abuse of clients [] likely to constitute an immediate and serious danger" under 55 Pa. Code § 20.37. Issuing the Removal Order was prudent and authorized by law.

Accordingly, under all the circumstances confronting her, Morris performed her duties in accordance with law and not in violation of a clearly established right.[17]   Morris is entitled to qualified immunity and for this reason Plaintiffs' claim against her in Count VI for violation of their due process rights will be dismissed.

## V.   CONCLUSION

For reasons set forth above, the Court will grant the City of Philadelphia and Police Commissioner Richard Ross, Jr.'s Motion to Dismiss the Amended Complaint (Doc. No. 8) and Suzann Morris's Motion to Dismiss (Doc. No. 21).  The City of Philadelphia, Police Commissioner Richard Ross, Jr., and Suzann Morris will be dismissed as Defendants in this case.  In addition, the Philadelphia Police Department and Philadelphia DHS also will be dismissed as Defendants in this case.  An appropriate Order follows.[18]

---

[17]   Since Plaintiffs have not satisfied the "clearly established" inquiry, the Court need not consider if Plaintiffs' allegations made out a violation of a constitutional right, the other prong of the qualified immunity analysis.

[18]   In the interest of clarity, William Brophy, Toni Madgey, Carol Farrell, and Jenifer Klepsky remain as Defendants in this case.  All remaining Defendants have filed Answers to the Amended Complaint.  Brophy, Madgey and Ferrell filed their joint Answer on October 16, 2019.  (Doc. No. 9.)  Klepsky filed an Answer on October 23, 2019.  (Doc. No. 17.)