IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUNCAN ROUND, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>CITY OF PHILADELPHIA, et al.,<br><br>            Defendants. | CIVIL ACTION<br>NO. 19-3513 |

## OPINION

**Slomsky, J.**                                                    **July 22, 2022**

### TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................2

        A.      Factual Background ...................................................................................2

                1.      First Incident Report .......................................................................2

                2.      Second Incident Report ..................................................................3

                3.      Initial Interviews at the Department of Health
                        and Human Services ........................................................................3

                4.      Forensic Interviews at the Philadelphia Children's
                        Alliance ...........................................................................................5

                5.      Additional Investigation at Sprouts Day Care ...............................7

                6.      Affidavit of Probable Cause for the Arrest Warrant......................8

        B.      Procedural Background .........................................................................11

III.    STANDARDS OF REVIEW ..............................................................................14

        A.      Summary Judgment................................................................................14

**B.**      **Qualified Immunity** .................................................................15

**IV.**   **ANALYSIS**.............................................................................................15

**A.**      **Defendant's Motion for Summary Judgment on Counts I and IV Will Be Denied**................................................................................16

1.      Probable Cause..............................................................17

    a.      Reckless Omissions ..........................................20

    b.      Reconstructed Affidavit for Materiality Analysis .........................25

    c.      Materiality of Omitted Information to Probable Cause ................28

**B.**      **Defendant Officer Madgey is Not Entitled to Qualified Immunity At This Stage of the Case**............................................................34

1.      Constitutional Right at Issue..........................................35

2.      Whether the Right at Issue Was Clearly Established................................37

**V.**    **CONCLUSION** ........................................................................................45

## I.   INTRODUCTION

This case involves serious allegations of sexual assault made by two young children against the owners of a daycare center.  Plaintiffs Duncan Round ("Mr. Round") and Kristen Round ("Ms. Round"), the owners of the daycare center, brought this suit on August 2, 2019 alleging violations of their constitutional rights under 42 U.S.C. § 1983 after Mr. Round was arrested by officers of the Philadelphia Police Department for sexual assault of the two minors and his criminal case was dismissed.  The allegations of sexual assault resulted not only in Mr. Round's arrest, but also the removal of all children from Sprouts Day Care, the childcare center owned and operated by Plaintiffs.

Before the Court is a Motion for Summary Judgment filed by Defendants, three employed by the Philadelphia Police Department and one by the Department of Health and Human Services ("DHS").  They are Officer Toni Madgey, Officer William Brophy, Detective Carol Farrell, and Jenifer Klepesky.  They seek dismissal of all claims brought against them by Plaintiffs Duncan Round and Kristen Round.  In Plaintiffs' Response in Opposition to the Motion, however, Plaintiffs voluntarily withdrew their claims against Defendants Brophy, Farrell, and Klepesky, leaving only Officer Toni Madgey as a Defendant.  Also withdrawn were claims made by Plaintiff Kristen Round.  (Doc. No. 50-1 at 15, 34.)  Further, as indicated in the Response and at the hearing held with counsel for the parties on January 18, 2022, Plaintiffs voluntarily agreed to the dismissal of Counts II, III, V, and VI of the Amended Complaint.  (Id. at 30, 34.)

Therefore, at this point, Duncan Round is the only remaining Plaintiff and Officer Toni Madgey is the only remaining Defendant in this case.  Moreover, the only claims remaining are alleged Fourth Amendment violations for (1) unlawful arrest (Count I) and (2) malicious prosecution (Count IV), both brought pursuant to § 1983.  Accordingly, at this juncture, the

Motion for Summary Judgment asks the Court to enter judgment in favor of Officer Madgey on Counts I and IV as asserted against her by Mr. Round.

Because a reasonable jury may find that Defendant Officer Toni Madgey lacked probable cause to arrest Mr. Round, her Motion for Summary Judgment on Counts I and IV will be denied.  Further, Officer Madgey is not covered by qualified immunity at this point in the litigation.  Accordingly, Defendant's Motion for Summary Judgment will be denied in its entirety.

## II.   BACKGROUND

### A.   Factual Background[1]

Plaintiffs Duncan Round and Kristen Round, his wife, owned and operated Sprouts Day Care Center ("Sprouts"), a daycare center located in Philadelphia, Pennsylvania.  (See Doc. No. 48-1, Def. Ex. 2 at 3.)  In July 2015, Colin and Heather Shearn enrolled at Sprouts their two twin children—a five-year-old brother and sister (referred to as "A.S." and "C.S.," respectively). (Doc. No. 48-6, Def. Ex. 17 at 3.)

#### 1.   First Incident Report

On July 21, 2017, Mrs. Shearn noticed that A.S. and C.S. were acting strangely at home. (Doc. No. 48-1, Def. Ex. 2 at 3.)  The following day, on July 22, 2017, Mrs. Shearn called the Philadelphia Police Department ("PPD").  The PPD sent officers to the house to complete an incident report (the "First Incident Report").  (Doc. No. 53, Plff. Ex. 1 at 3; see Doc. No. 46-6, Def. Ex. 5, Madgey Dep. 70:6–10.)  As noted in the First Incident Report, Mrs. Shearn told the officers of the children's "changed behavior."  (Id.)  When the officers tried to speak with A.S.

---

[1]   As the Court will explain infra, the instant Motion concerns whether there was probable cause to arrest Mr. Round.  Thus, the facts and events relevant to the Motion are the facts that were known to Officer Madgey and the events that occurred prior to her submission of the affidavit of probable cause to the magistrate judge.

and C.S., the children were too afraid to speak with them.  (Id.)  At that time, Mrs. Shearn "state[d] that she believe[d] something happened to them while at the daycare/gym,"[2] and told the police that she would bring the children to the hospital the next day.  (Id.)  However, she did not do so.  (See Doc. No. 50-1 at 4.)

### 2. Second Incident Report

On July 23, 2022, Mrs. Shearn made a second report (the "Second Incident Report) to the police.  (See Doc. No. 50-1 at 4.)  In the Second Incident Report, the mother claimed for the first time that Mr. Round sexually abused her female child, C.S.  (See Doc. No. 48, Def. Ex. 1 at 3.)  The Second Incident Report included graphic allegations against Mr. Round, since the mother conveyed that the children had disclosed sexual abuse by the daycare owner against C.S., and that the children had said that the abuse occurred in the bathroom of the daycare.  (Id.)  Notably, the allegations in the Second Incident Report did not implicate any staff members at Sprouts other than Mr. Round.  (Id.)  Moreover, the Second Incident Report noted that, after the children had disclosed this information the night before, the parents "called local police to report the concern" and that Mrs. Shearn "contacted a child psychiatrist."[3]  (Id.)  After the second report was filed, the matter was referred to the Philadelphia Department of Health and Human Services ("DHS").  (See Doc. No. 48-1 at 3.)

### 3. Initial Interviews at the Department of Health and Human Services

On July 24, 2017, Jenifer Klepesky ("Ms. Klepesky"), a social worker employed by DHS, went to the children's home and conducted initial interviews with A.S., C.S., and Mrs.

---

[2]  Sprouts has a children's gym.  (See Doc. No. 48-1 at 4.)

[3]  Plaintiff argues that these statements contradict those in the initial report because no allegations of sexual abuse were made in First Incident Report.  (Doc. No. 50-1 at 4.)

Shearn.  (See Doc. No. 48-1, Def. Ex. 2.)  Mrs. Shearn said that she had noticed behavior changes in the children "for the past couple weeks."  (Id. at 3.)  In the initial interview with Ms. Klepesky, the children's mother alleged, as she had previously, that Mr. Round sexually abused the female child, C.S. (Doc. No. 46-5, Def. Ex. 4, Madgey Dep. 83:14–15.)  However, for the first time, Mrs. Shearn implicated in the abuse another adult staff member at Sprouts, later identified as Carmel "Candy" Storti.[4]  In the children's initial interview, C.S. said that Mr. Round followed her into the bathroom and abused her, after which "she told him to stop and he did and Ms. Candy told [Mr. Round] to stop too."  (Id.)  Although A.S., the male child, told Ms. Klepesky that nothing had happened to him, Mrs. Shearn said that she was not sure whether this was true due to his behavior.  (Id.)

During the initial DHS interviews on July 24, 2017, Ms. Klepesky learned from Mrs. Shearn of another incident that had occurred at Sprouts a month prior.  (See Doc. No. 48-1 at 4.) In June 2017, A.S. fell on his shoulder and broke his clavicle while in the gym at Sprouts.  (See id.)  When the children's parents expressed a desire to withdraw A.S. and C.S. from Sprouts and asked for a refund of their prepaid tuition, their request was denied.  (See id.)  Because they did not receive a refund, Mr. and Mrs. Shearn continued to send A.S. and C.S. to Sprouts until the events at issue in this case.  (See id.)  Further, the mother informed Ms. Klepesky that she had conveyed the children's allegations to Ms. Candy, who responded that "the children are liars and have lied before."  (Id.)

---

[4]   According to the initial interview report, Mrs. Shearn said that after the alleged abuse, C.S. "told Ms. Candy to try to get it to stop and Ms. Candy said to tell mom."  (Doc. No. 48-1, Def. Ex. 2 at 3.)  It was also reported by the mother that A.S. and C.S. said that "Ms. Candy walked in twice on [Mr. Round] doing something to the children and walked back out without stopping anything."  (Id.)

Thereafter, the matter was referred by DHS to the Philadelphia Police Department Special Victims Unit ("SVU") and assigned to Defendant Officer Toni Madgey.  (See Doc. No. 46-6, Def. Ex. 5, Madgey Dep. 29:11–30:15; see also Doc. No. 48-5 at 4.)   When Officer Madgey was assigned to the case, she was provided with the First and Second Incident Reports, dated July 22 and 23, respectively.[5]  (See Doc. No. 67-1 at 2.)  The matter also was referred to the Philadelphia Children's Alliance ("PCA") for an emergency forensic interview.  (See Doc. No. 48-1, Def. Ex. 1.)

### 4.      Forensic Interviews at the Philadelphia Children's Alliance

On July 25, 2017, a PCA employee did an emergency forensic interview of C.S. and A.S. (See Doc. No. 48-1, Def. Ex. 2.)   The interview was done by Colleen Getz, a Forensic Interviewer for PCA, and attended by Officer Madgey and Ms. Klepesky, who were out of sight of the children.  (See id. at 2; see also Doc. No. 67 at 8.)  Prior to these interviews, Officer Madgey, Ms. Klepesky, and Ms. Getz received information from Mr. and Mrs. Shearn regarding how the allegations against Mr. Round came about.  (See Doc. No. 67-1 at 3; see also Doc. No. 48-1 at 5.)  When C.S. entered the interview room, she immediately began disclosing the alleged abuse, and thus a formal assessment of competency was not performed by Ms. Getz.  (Doc. No. 48-1 at 9.)  During the interview, C.S. stated that Mr. Round had sexually assaulted her on numerous occasions.  (Id. at 10.)

The allegations of C.S., however, also included statements that were at times contradictory and implausible.  For example, C.S. stated that the abuse occurred in locations

---

[5]   On July 25, 2017, Officer Madgey also was given information on Ms. Klepesky's initial interviews with the children and their mother.  She was furnished with a summary of the July 24, 2017 interviews included in the "PCA Team Interview Summary" and information from the forensic interviews conducted at PCA.  (See Doc. No. 48-1, Def. Ex. 2. at 3–4.)

other than the bathroom at Sprouts, including in public areas such as the baby's room, library, and hallway at the school in the presence of her friends and other staff, at her house, and even at a museum in the presence of her parents, brother, and cousins.[6]  (See Doc. No. 53-2, Plff. Ex. 3 at 9–10, 18, 24, 28.)  Also, C.S. said that Mr. Round had removed his clothes in front of the other children at the daycare and they laughed at him, and that Mr. Round held a knife from the daycare kitchen to her face and tried to kill her, but she ran home.  (Id. at 29–30, 31.)  Notably, C.S. said that her parents had promised her ice cream and a stuffed animal after she talked about "Mr. Round's penis," and when she was asked to describe the abuse, C.S. compared Mr. Round's genitals to her father's.  (Id. at 6, 37.)  Finally, C.S. alleged that Mr. Round also had sexually assaulted her brother, A.S, in the presence of Ms. Storti.  (Id. at 34.)

Next, Ms. Getz interviewed A.S., who made further allegations against Mr. Round, along with several unusual statements that called into question the children's truthfulness.  (See Doc. No. 53-6, Plff. Ex. 53-6.)  At the beginning of the interview, A.S. told Ms. Getz twice that it is "okay to lie."  (Id. at 9.)  A.S. also said that during the alleged abuse, Mr. Round's penis had touched his nose, but not anywhere else on his body.  (Id. at 28.)  A.S. recounted that Mr. Round would poke his cheeks with his fingers until he said the "password," which was "monkeys."  (Id. at 32.)  Further, A.S. said that Ms. Storti had showed him her genitals and touched his nose and arms with her hands.[7]  (Id. at 36–38.)  During his interview, A.S. provided a description of Ms.

---

[6]   Later in the interview, when asked whether Mr. Round had ever been to her house, C.S. responded, "No."  (Doc. No. 53-2 at 38.)

[7]   When asked about the accusation against Ms. Storti at her deposition and why she omitted it from the affidavit of probable cause, see infra, Officer Madgey explained that Ms. Storti "could have been in the bathroom when [the children] went to the bathroom," and that the children "never gave descriptive detail as they did with Mr. Duncan [Round]."  (See Doc. No. 46-6, Def. Ex. 5, Madgey Dep. 103:9–104:15.)  During the interview, however, A.S. provided a description of Ms. Storti's genitals and drew a picture.  (Doc. No. 53-6 at 40–42.)

Storti's genitals and drew a picture.  (Doc. No. 53-6 at 40–42.)  Also, A.S. stated that he would not be going back to Sprouts "because mommy tell me that teachers wasn't nice [sic]."  (Id. at 23.)

Afterwards, Ms. Getz completed a summary of the forensic interviews of C.S. and A.S. on July 25, 2017 (the "PCA Summary").  (See Doc. No. 48-1.)  In the PCA Summary, Ms. Getz summarized the DHS initial interviews with Ms. Klepesky conducted on July 24, 2017.  (See id. at 3–4.)  The PCA Summary was then provided to Officer Madgey.  (See Doc. No. 67-1 at 4.) After the forensic interviews, C.S. and A.S. were taken to the Children's Hospital of Philadelphia ("CHOP") for physical examinations.[8]  (Doc. No. 48-4, Def. Ex. 11.)

### 5.    Additional Investigation at Sprouts Day Care

On July 25, 2017, the same day as the PCA forensic interviews, Officer Madgey submitted for approval an application for a search warrant to search, take photographs, and collect biological material at Sprouts to "corroborate the complainant's statement of this reported crime."  (Doc. No. 46-9, Def. Ex. 12 at 3.)  The search warrant listed the alleged crimes as rape, corrupting the morals of a minor, indecent assault, indecent exposure, and endangering the welfare of a child.  (See id.)  The District Attorney's Office ("DAO") approved the search warrant for Sprouts, as did the judge to whom it was submitted to issue the warrant.  Officer Madgey and a crime scene unit then executed the warrant at approximately 9:30 p.m. on the evening of July 25.  (See id.; see also Doc. No. 46-6, Def. Ex. 5, Madgey Dep. 100:1–5.)  When the search warrant was executed, Officer Madgey directed the crime scene unit to focus on one the bathrooms and library, based on information provided by the children in the PCA interviews. (Doc. No. 46-6, Def. Ex. 5, Madgey Dep. 103:15–104:5.)  In the bathroom that was searched at

---

[8]    As the Court will explain infra, the children's examinations turned out normal.

Sprouts, Officer Madgey and the crime scene unit identified biological material and collected specimens to send to a laboratory.  (Doc. No. 46-5, Def. Ex. 4, Madgey Dep. 75:16–76:17.)  The biological material was not identified as sperm until July 29, 2017, four days after Defendant Officer Madgey submitted the affidavit of probable cause to the magistrate judge to arrest Mr. Round.[9]  (See id.)

### 6.     Affidavit of Probable Cause for the Arrest Warrant

On July 27 and July 28, 2017, Officer Madgey prepared the draft affidavit of probable cause to support an arrest warrant for Mr. Round.  (See Doc. No. 67-1 at 5.)  In addition to her own observation of the PCA forensic interviews of the children by Ms. Getz on July 25, 2017, Officer Madgey also had available to her during the drafting of the affidavit the First and Second Incident Reports (see Doc. Nos. 48 at 2–5, 50-1 at 4), a summary of DHS's initial interviews on July 24, 2017 (see Doc. No. 48-1 at 3–4), and a summary of the PCA interviews by Ms. Getz with her impressions (see id. at 5–14).  Officer Madgey uploaded documents obtained in connection with the investigation to the Police Integrated Information Network, to which the District Attorney's Office ("DAO") had access.  (See Doc. No. 67-1 at 5.)  After preparing a draft affidavit, Officer Madgey sent it to the DAO for prior approval, and it was reviewed by Assistant District Attorney ("ADA") Branwen McNabb.  (See id.)

On July 28, 2017, Mrs. Shearn contacted Officer Madgey with additional information from the children.  She reported that A.S. told her about additional abuse by Mr. Round, recounting that he had "peed in his face and eyes and could not see."  (Doc. No. 46-6, Def. Ex. 5,

---

[9]     Later, on August 30, 2017, DNA results excluded Mr. Round from matching the material seized.  (Doc. No. 48-7, Def. Ex. 24 at 2–3.)

Madgey Dep. at 116:8–117:4.)   Officer Madgey added some of this information to the draft affidavit of probable cause.  (<u>Id.</u> at 118:1–8.)

On July 28, 2017, Officer Madgey submitted the arrest warrant for Mr. Round with the affidavit of probable cause to Magistrate Judge Janet Rice after receiving approval from ADA McNabb.[10]  (<u>Id.</u> at 167:15–169:14.)  In its entirety, the affidavit of probable cause reads:

<div style="margin-left:2em;">

1703040917          On Tuesday, July 25th, 2017, the complainant who is known to the Commonwealth and is available to testify in court, was interviewed inside of Philadelphia Children's Alliance and stated while inside the daycare at 604 S. 9th St. the defendant, Duncan Round DOB 03/07/64 pulled his pants down and touched his own penis then let the complainant touch his penis.  Complainant also stated that the defendant put his penis in her mouth, in her butt, and on her face.

Complainant also stated that the defendant "peed" on her foot, in her mouth and butt, and also in her hand more than one time. Complainant also stated that the defendant told her to shut up and keep doing it.  Complainant also stated that the defendant touched her vagina with his penis over her clothing.   The complainant states that incidents occurred in the bathroom, library, hallway, and baby room. Of 604 S. 9th St. Philadelphia Pa. 19147 property that is owned by KRMP  604 LLC.

The complainant can't give a specific date of the incidents occurring. Complainant did say it happened when she was 5 (complainant is 5 at time of report.)  The complainant started the daycare in July 2015 till July 21st 2017.

The offender has several address [sic] linked to his name and business. (BMV) 901 N. Penn St. Unit 01702 Philadelphia Pa. 19123, 171 Cheyenne Trail Medford Lakes NJ. 08055, 1118 E. Montgomery Ave. 19125

This affidavit was reviewed and preapproved by ADA Branwen McNabb on 7/28/17 at 1:00pm.

</div>

---

[10]  It is unclear whether ADA McNabb had knowledge of additional information from the mother not included by Officer Madgey in the affidavit of probable cause, and what records ADA McNabb had available to her at the time.  (<u>See</u> Doc. Nos. 46-2 at 29, 50-1 at 31.)

1703040918          On Tuesday, July 25th, 2017, the complainant who is known to the Commonwealth and is available to testify in court, was interviewed inside of Philadelphia Children's Alliance and stated while inside the daycare at 604 S. 9th St. the defendant, Duncan Round DOB 03/07/64 pulled down his pants and showed the complainant his penis. The complainant also stated that the defendant put his penis on his nose and poked his cheeks with his fingers. The complainant states that incidents occurred in the bathroom of 604 S. 9th St. Philadelphia Pa. 19147 property that is owned by KRMP 604 LLC.

The complainant can't give a specific date of the incidents occurring. The complainant started the daycare in July 2015 till July 21st 2017.

The offender has several address [sic] linked to his name and business. (BMV) 901 N. Penn St. Unit 01702 Philadelphia Pa. 19123, 171 Cheyenne Trail Medford Lakes NJ. 08055, 1118 E. Montgomery Ave. 19125

On 7/28/17 P/O Madgey #4224 spoke to the mother of the complainant by phone. Mother told P/O Madgey that the complainant told her that the defendant "peed" in his face and eyes and he could not see. The complainant did not disclose this information during his interview.

This affidavit was reviewed and preapproved by ADA Branwen McNabb on 7/28/17 at 1:00pm.

(Doc. No. 46-13.) The first portion of the affidavit pertains to C.S., and the second portion pertains to A.S. On July 28, 2017, after review by Philadelphia Magistrate Judge Rice, the warrant for Mr. Round's arrest was signed and issued. (See id.)

On August 2, 2017, Mr. Round voluntarily surrendered to the Philadelphia Police Department and was charged with the following felony offenses: rape of a child, involuntary deviate sexual intercourse with a child, contact with a minor, statutory sexual assault, sexual assault, endangering the welfare of a child, corruption of minors. Mr. Round also was charged with misdemeanor offenses of indecent exposure and reckless endangerment of another person. (See Doc. No. 46-17, Def. Ex. 22.) And on August 3, 2017, Suzann Morris, the Deputy

10

Secretary of Philadelphia DHS, issued an order pursuant to 55 Pa. Code § 20.37[11] (the "Removal Order") removing all children from Sprouts and effectively closing the day care center for an indefinite period.[12]   (Doc. No. 46-3 at 8.)   To this day, Sprouts remains closed.[13]   After a preliminary hearing was held in the Philadelphia Court of Common Pleas and after further investigation by the Philadelphia Police Department and DHS,[14] the DAO determined that the Commonwealth of Pennsylvania could not meet its burden to prove the charges against Mr. Round beyond a reasonable doubt.  (Id. at 10; see also Doc. No. 46-15, Def. Ex. 20, McNabb Dep. at 166:14–167:8.)  On January 16, 2019, the Philadelphia DAO moved to dismiss, or to "Nolle Prosequi," the criminal case against Plaintiff Duncan Round.   (Doc. No. 46-20, Def. Ex. 31.)  It was granted on the same day.  (Id. at 22.)

### B.      Procedural Background

On August 2, 2019, Plaintiffs Duncan and Kirsten Round initiated the above-captioned case by filing a Complaint (Doc. No. 1) against nine Defendants: (1) the City of Philadelphia; (2)

---

[11]   55 Pa. Code § 20.37 states, in pertinent part:

> If the Department finds evidence of gross incompetence, negligence, misconduct in operating the facility or agency, or mistreatment or abuse of clients, likely to constitute an immediate and serious danger to the life or health of the clients, the Department will take immediate action to remove the clients from the facility or agency.

55 Pa. Code § 20.37.

[12]   Mr. and Mrs. Round did not avail themselves of the right to appeal the Removal Order. (Doc. No. 46-3 at 10.)

[13]   In the Amended Complaint, filed on November 1, 2019, Plaintiffs informed the Court of the closing.   (See Doc. No. 6 ¶ 125.)   The Court has not been notified of any reopening of Sprouts.

[14]   During their investigation, Philadelphia Police Department and DHS conducted interviews with staff and parents from the daycare, who either denied or failed to corroborate the allegations made against Mr. Round.  (Doc. No. 46-3 at 10.)

the Philadelphia Police Department; (3) Police Commissioner Richard Ross, Jr.; (4) Officer William Brophy; (5) Officer Toni Madgey; (6) Officer Carol Farrell; (7) Philadelphia DHS; (8) Deputy Secretary Suzann Morris; and (9) Philadelphia DHS Investigator Jenifer Klepesky.  (Id. at 1–2.)  A Motion to Dismiss was filed by the City of Philadelphia and Police Commissioner Richard Ross, Jr. (Doc. No. 2), and thereafter, Plaintiffs filed an Amended Complaint, naming the same nine Defendants.  (Doc. No. 6.)  The Amended Complaint asserted the following seven claims:

Count I:        Unlawful arrest under 42 U.S.C. § 1983 against all individual Defendants;

Count II:       A supplemental state law claim for false imprisonment against all individual Defendants;

Count III:      Unjustified search under 42 U.S.C. § 1983 against all individual Defendants;

Count IV:       Malicious Prosecution under 42 U.S.C. § 1983 against all individual Defendants;

Count V:        A supplemental state law claim for malicious prosecution against all individual Defendants;

Count VI:       Deprivation of Property Interest without Due Process under 42 U.S.C. § 1983 against all Defendants; and

Count VII:      A Monell claim under 42 U.S.C. § 1983 against the Philadelphia Police Department, the Philadelphia Department of Human Services, and the City of Philadelphia.

(Doc. No. 6 at 19–26.)

On October 16, 2019, the City of Philadelphia and Police Commissioner Richard Ross, Jr. filed a Second Motion to Dismiss.  (Doc. No. 8.)  Further, on October 28, 2019, Susann Morris also filed a Motion to Dismiss.  (Doc. No. 21.)  In an Opinion and Order dated May 1, 2020, the Court dismissed as Defendants in this case the City of Philadelphia, the Philadelphia Police Department, the Philadelphia Department of Human Services, Police Commissioner

Richard Ross, Jr., and Suzann Morris.  (See Doc. Nos. 31, 32.)  Thus, Counts I through VI were dismissed as to these Defendants.  Count VII was dismissed in its entirety.  (See id.)

On October 25, 2021, the instant Motion for Summary Judgment was filed by Defendants Officer Toni Madgey, Officer William Brophy, Detective Carol Farrell, and Jenifer Klepesky. (Doc. No. 46.)  On November 15, 2021, Plaintiffs filed a Response in Opposition.  (Doc. No. 50.)  As noted, in the Response in Opposition, Plaintiff Kirsten Round voluntarily withdrew her claims in this case.  (Doc. No. 50-1 at 34.)  Thus, Duncan Round is the only remaining Plaintiff. Further, in the Response and at the hearing held on January 18, 2022, Plaintiffs voluntarily dismissed their claims against all Defendants, except for Officer Toni Madgey, and dismissed all claims except two: Count I, for unlawful arrest pursuant to § 1983, and Count IV, for malicious prosecution pursuant to § 1983.  (Doc. No. 50-1 at 15.)  Therefore, this case now solely concerns Plaintiff Mr. Round's claims in Counts I and IV against Officer Toni Madgey.  On November 22, 2021, Defendant Officer Madgey filed a Reply in Support of her Summary Judgment Motion. (Doc. No. 54.)

On January 18, 2022, the Court held a hearing with counsel for the parties on Defendant's Motion for Summary Judgment.  At the hearing, the Court clarified the claims and parties remaining and requested supplemental memoranda on several topics, including: (1) a timeline of events to clarify what Officer Madgey knew regarding this matter prior to submission of the affidavit of probable cause for the arrest warrant; and (2) the constitutional right at issue in this case for qualified immunity purposes.  On March 28, 2022, Plaintiff filed his Supplemental Brief (Doc. No. 66), and on March 29, 2022, Defendant filed her Supplemental Brief (Doc. No. 67). The matter is now fully briefed and ripe for disposition.

**III.     STANDARDS OF REVIEW**

**A.     Summary Judgment**

Granting summary judgment is an extraordinary remedy.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247–49.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Id. at

255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

### B.    Qualified Immunity

Qualified immunity is an affirmative defense.  Sharp v. Johnson, 669 F.3d 144, 158 (3d Cir. 2012).  "[A]ffirmative defenses may be raised at any time, even after trial, so long as the plaintiff suffers no prejudice."  Id.  A movant asserting an affirmative defense at the summary judgment stage has the burden of proof on that defense.  See Richard B. Roush, Inc., Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 585 (3d Cir. 2002).  For a defendant to be afforded the protection of qualified immunity, two well-established elements must be met.  The Court must determine (1) "whether the facts alleged by the plaintiff show the violation of a constitutional right;" and (2) "whether the law was clearly established at the time of the violation."  Jefferson v. Lias, 21 F.4th 74, 80 (3d Cir. 2021) (citing Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010)).

## IV.    ANALYSIS

Plaintiff Duncan Round has filed suit under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights.  He contends that Defendant Officer Madgey violated his constitutional rights by recklessly omitting exculpatory information in the arrest warrant affidavit, resulting in his arrest without probable cause.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

To recover under § 1983, a plaintiff must establish that a defendant, "acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." Black v. Montgomery County, 835 F.3d 358, 364 (3d Cir. 2016) (quoting Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005)), cert. denied sub nom. Pomponio v. Black, 137 S. Ct. 2093 (2017) (mem). Section 1983 "is not a source of substantive rights but rather a mechanism to vindicate rights afforded by the Constitution or a federal statute." Id. (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).

Given these basic precepts, the Court first will assess the merits of Plaintiff's Fourth Amendment claims of both unlawful arrest and malicious prosecution as alleged under § 1983. Second, the Court will analyze Defendant's affirmative defense of qualified immunity. Finally, the Court will determine whether granting summary judgment in favor of Defendant is warranted.

### A. Defendant's Motion for Summary Judgment on Counts I and IV will be denied.

Plaintiff Duncan Round's remaining claims against Defendant Officer Madgey are for unlawful arrest (Count I) and malicious prosecution (Count IV). For reasons set forth below, the Court will deny Defendant's Motion for Summary Judgment on Counts I and IV because a reasonable jury could find that Officer Madgey lacked probable cause to arrest Mr. Round.

"To assess claims of false arrest, the court must determine whether 'the arresting officers had probable cause to believe the person arrested had committed the offense.'" Andrews v. Scuilli, 853 F.3d 690, 697 (3d Cir. 2017) (citing Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)). In turn, to properly allege a malicious prosecution claim, a plaintiff must show the following:

> (1) the defendant initiated the proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Johnson v. Knorr, 477 F.3d 75, 81–82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  Both "false arrest and malicious prosecution hinge on probable cause," and thus the issue central to the instant Motion is whether probable cause existed at the time of Plaintiff's arrest.  Andrews, 853 F.3d at 697.

### 1.     Probable Cause

The gravamen of Plaintiff's argument is that Officer Madgey should not have based probable cause to arrest upon the uncorroborated and inconsistent statements of C.S. and A.S., two children aged five, and that by omitting information relevant to their reliability from the affidavit of probable cause, Officer Madgey violated Mr. Round's Fourth Amendment rights because, simply put, probable cause was lacking.

Under the Fourth Amendment, police officers are required to have probable cause before making an arrest.  Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972); Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010).  A police officer has probable cause to arrest "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Merkle v. Upper Dublin Sch. Dist., 211 F. 3d 782, 788 (3d Cir. 2000) (citation omitted).  Probable cause does not require proof of guilt beyond a reasonable doubt, but only a fair probability that the arrestee committed the crime at issue.  Dempsey v. Bucknell Univ., 834 F. 3d 457, 467 (3d Cir. 2016) (quoting Wilson v. Russo, 220 F.3d 781, 789 (3d Cir. 2000)).

17

In reviewing an officer's determination of probable cause, a court must evaluate the totality of circumstances to determine whether the objective facts available to the officer were sufficient to justify a reasonable belief that a suspect had committed or was committing a crime. Merkle, 211 F.3d at 789. Nevertheless, because a "determination [of probable cause] is necessarily fact-intensive, [] it will usually be appropriate for a jury to determine whether probable cause existed." Macolino v. McCoy, Civ. No. 18-1476, 2022 WL 1203565, at *4 (E.D. Pa. Apr. 22, 2022) (citing Dempsey, 834 F.3d at 468).

An arrest warrant will issue only if a neutral and detached magistrate agrees with the police officer that probable cause to arrest exists. Wilson, 220 F.3d 787 ("[A]n uninterested party is presumably better suited to review and evaluate the facts than an officer pursuing a lead."). "[B]efore issuing an arrest warrant, a magistrate need not find proof beyond a reasonable doubt, or by a preponderance of the evidence, that a suspect has committed the crime(s) in question. . . . [I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" Lindenbaum v. Erenius, Civ. No. 10-00285, 2010 WL 2375958, at *5 (E.D. Pa. June 10, 2010), aff'd, 433 Fed. App'x. 119 (3d Cir. 2011) (citing Illinois v. Gates, 462 U.S. 213, 235 (1983)). "If, however, the officer does not provide the neutral magistrate with an accurate affidavit of probable cause, the protection afforded by the magistrate's review is lost; the magistrate will be unable to assess the circumstances for probable cause because he will not know what those circumstances actually are." Dempsey, 834 F.3d at 469.

In this case, Plaintiff was arrested pursuant to a warrant for the offenses of rape of a child, involuntary deviate sexual intercourse with a child, contact with a minor, statutory sexual assault, sexual assault, endangering the welfare of a child, corruption of minors, indecent exposure, and reckless endangerment of another person. (See Doc. No. 46-17, Def. Ex. 22.) Plaintiff Duncan

Round asserts that Defendant Officer Madgey lacked probable cause to arrest him for these charges because she omitted material information regarding the children's unreliability from the affidavit of probable cause that was submitted to a magistrate judge.  Information regarding the unreliability was crucial, according to Plaintiff, because at the time the incidents alleged were reported, the children were five years old.

The Third Circuit has set forth a test to determine when a false statement or material omission in an arrest warrant affidavit gives rise to a Fourth Amendment violation.  In <u>Wilson v. Russo</u>, 212 F.3d 781, 787 (3d Cir. 2000) the Third Circuit referred to the seminal holding in <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) and noted as follows:

> In <u>Franks</u>, the Court held that where a defendant showed by the preponderance of the evidence that a false statement necessary to the finding of probable cause was made "knowingly and intentionally, or with reckless disregard for the truth," the constitution requires that any evidence derived from the exercise of that warrant [must] be excluded from a criminal trial.  <u>Id.</u> at 155, 98 S.Ct. 2674.  But as the Court of Appeals for the District of Columbia Circuit has lamented, "[u]nfortunately, the Supreme Court in <u>Franks</u> gave no guidance concerning what constitutes a reckless disregard for the truth in [F]ourth [A]mendment cases, except to state that 'negligence or innocent mistake[is] insufficient.'"  <u>United States v. Davis</u>, 617 F.2d 677, 694 (D.C. Cir. 1979) (quoting <u>Franks</u>, 438 U.S. at 171, 98 S.Ct. 2674).  This case, with its hybrid allegation (Russo purportedly doctored some facts and failed to inform the judge of others) requires us to acknowledge that reckless disregard for the truth means different things when dealing with omissions and assertions, and to explain the different methodologies for dealing with each.

<u>Wilson</u>, 212 F.3d at 787.

With <u>Franks</u> and its progeny in mind, the Third Circuit in <u>Wilson</u> noted two factors to consider when material omissions or false statements constitute a Fourth Amendment violation. To demonstrate that an arrest warrant lacked probable cause, a plaintiff must show: (1) the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) such statements

or omissions are material, or necessary, to the finding of probable cause.  Wilson v. Russo, 212 F.3d 781, 786–87 (3d Cir. 2000) (quotation marks omitted).   In practice, courts in the Third Circuit have performed a three-step analysis to assess these factors:

> We follow the three-step procedure we described in Wilson . . . First, we assess the evidence the plaintiff asserts was recklessly omitted from the affidavit.  Next, we reconstruct an affidavit that includes any recklessly omitted information.  And finally, we assess the materiality of the omitted information to the probable cause determination.

Dempsey v. Bucknell Univ., 834 F.3d 457, 470 (3d Cir. 2016).   The Court will follow here, in turn, each of the three steps identified in Dempsey in relation to the claims made by Mr. Round of reckless omission.

### a.      Reckless Omissions

Plaintiff contends that Officer Madgey recklessly omitted from the affidavit of probable cause material information regarding the victims' unreliability as child witnesses.  "To determine whether information was recklessly omitted, we ask whether the officer withheld a fact in his ken that any reasonable person would have known that this was the kind of thing the [magistrate] judge would wish to know."   Dempsey v. Bucknell Univ., 834 F.3d 457, 470 (3d Cir. 2016) (citation and alteration omitted).   In conducting this inquiry, the Court must determine whether: (1) the officer had knowledge of the alleged information that was recklessly omitted; and (2) that the alleged information is relevant to the existence of probable cause.  Id. at 471.

In Plaintiff's Response in Opposition (Doc. No. 50) and Supplemental Memorandum (Doc. No. 66), he states that, inter alia, the following information pertaining to the children's statements should have been included by Officer Madgey in the affidavit of probable cause:

(1)      The age of A.S. and the fact that he and C.S., the two alleged victims, are twin brother and sister;

(2)     The financial dispute that the children's parents had with Sprouts, the daycare owned and operated by Mr. Round, only a month before the events at issue;

(3)     The fact that C.S.'s competency was never formally assessed prior to her forensic interview by Ms. Getz, and therefore it is unclear whether she is competent to testify in court;[15]

(4)     C.S.'s statements implicating another adult staff member at the daycare, Ms. Storti, in the alleged abuse;

(5)     The fact that C.S. had also made fantastical and bizarre statements in her accusations, such as that: (a) Mr. Round had molested her at public places, such as in the hallway of the daycare, at her home, and at a museum, and that she stated these events had occurred in the presence of her classmates and family members; (b) Mr. Round had threatened her with a knife and

---

[15]   Pennsylvania Rule of Evidence 601 states:

(a)  <u>General Rule</u>. Every person is competent to be a witness except as otherwise provided by statute or in these rules.

(b)  <u>Disqualification for Specific Defects</u>. A person is incompetent to testify if the court finds that because of a mental condition or <u>immaturity</u> the person:

(1)  is, or was, at any relevant time, incapable of perceiving accurately;

(2)  is unable to express himself or herself so as to be understood either directly or through an interpreter;

(3)  has an impaired memory; or

(4)  does not sufficiently understand the duty to tell the truth.

PA. R. E. 601(a) (emphasis added).  The comment to Pennsylvania Rule of Evidence 601 notes that 601(b) was drafted to be "consistent with Pennsylvania law concerning the factors for determining competency of a person to testify, including persons with a mental defect and children of tender years."  PA. R. E. 601, cmt. (citing <u>Commonwealth v. Baker</u>, 353 A.2d 454 (Pa. 1976); <u>Commonwealth v. Goldblum</u>, 447 A.2d 234 (Pa. 1982); <u>Rosche v. McCoy</u>, 156 A.2d 307 (Pa. 1959)).

The comment further notes that the word "immaturity" in Rule 601(b) is taken from the Pennsylvania Supreme Court decision in <u>Rosche v. McCoy</u>, where the court held that "competency is presumed where the child is more than 14 years of age," but that "[u]nder 14 there must be a judicial inquiry as to mental capacity, which must be more searching in proportion to chronological immaturity."  156 A.2d at 310.  The Court will discuss in greater detail Pennsylvania precedent regarding child witnesses in the discussion of qualified immunity, <u>infra</u>.

she ran home; and (c) C.S.'s statement that Mr. Round had previously taken his clothes off in front of her entire class.

(6)   C.S.'s comparison of Mr. Round's genitals to her father's;

(7)   C.S.'s statement that her parents had promised her ice cream and a stuffed animal after she told Ms. Getz about Mr. Round's penis;

(8)   A.S.'s statement that "it's OK to lie;"

(9)   A.S.'s allegations of abuse against Ms. Storti, after which he described and drew a picture of her genitals;

(10)  Mrs. Shearn's statement that Ms. Storti said the children are liars and have lied before when asked about the allegations;

(11)  The fact that the children underwent physical examinations at CHOP and the results were normal; and

(12)  A search of a bathroom and library at the daycare revealed biological material in the first-floor bathroom, but an evaluation of the material was still pending.

(See Doc. Nos. 50-1, 66.)

Because the above information was omitted, Mr. Round argues that "Officer Madgey used her judgment [to determine] which facts were important" and edited the children's stories, depriving the magistrate judge of information material to the finding of probable cause, as these additional allegations "paint a picture of children who do not understand and are not able to communicate their claims of abuse." (Doc. Nos. 50-1 at 28, 66 at 21.)

First, the record in this case demonstrates that at the time she sought the arrest warrant, Officer Madgey had knowledge of the above information in paragraphs (1)–(10) and (12). As demonstrated by the record and explained by the Court supra, this information was known to Officer Madgey because it was in the First Incident Report, Second Incident Report, forensic interviews that she attended on July 25, 2017, and the PCA Interview Summary, which contained a summary of Ms. Klepesky's initial DHS interviews on July 24, 2017. (See Doc. No. 67 at 4.)

22

Defendant does not contest that the information from these documents and the forensic interviews was known to her at the time she prepared the affidavit of probable cause. (See id.) And, as testified by Officer Madgey in her deposition, she was present at the execution of the search warrant and knew that biological material had been found, but that it had not yet been identified by the Philadelphia Crime Lab when the arrest warrant was obtained. (See Doc. No. 46-6, Def. Ex. 5, Madgey Dep. 75:16–76:17, 100:1–5, 103:15–104:5.)

Regarding paragraph (11), however, there is a genuine dispute of fact as to whether Officer Madgey knew of the children's normal examination results before completing the affidavit of probable cause. Plaintiff asserts that this fact was known to Officer Madgey because the examination and report of CHOP was completed on July 25, 2017 and thus, the results would have been made available to her before she drafted the affidavit. (See Doc. Nos. 50-1 at 20–21, 66 at 8 n.17.) Further, Plaintiff supports this with Officer Madgey's deposition testimony: when asked whether she had the children's medical results prior to submitting the affidavit of probable cause, she responded that she was "not sure." (See Doc. No. 46-5, Def Ex. 4, Madgey Dep. 71:4–72:10.)

Nevertheless, Defendant in her Motion and Supplemental Memorandum maintains that this information was not available to her prior to preparing the affidavit and supports this assertion with a fax from CHOP sent to the SVU that is dated July 31, 2017, which included the normal results of the medical examination conducted on July 25, 2017. (See Doc. No. 48-4, Def. Ex. 11.) Due to this conflict, a genuine dispute of a material fact[16] exists for the jury to decide. Nevertheless, at this stage, the Court will credit Plaintiff's version of the facts and, drawing all

---

[16]   The Court will address whether this fact and the other allegedly omitted facts are material to the probable cause determination, infra.

justifiable inferences in his favor, will assume for purposes of the instant Motion that Officer

Madgey knew about this information when preparing the affidavit of probable cause.

Second, to determine whether the above information is relevant to the probable cause

determination, the Court asks whether "any reasonable person would know that a judge would

want to know a particular statement in making a probable cause determination." See Dempsey,

834 F.3d at 469.  After careful review of the record and viewing this information in the light most

favorable to Plaintiff, the Court agrees that, "in the context of this case and the allegations that

were included in the affidavit," the information in the above paragraphs was relevant to the

probable cause determination.  Id. at 473.

Here, a reasonable person would know that a magistrate would want to be given the

above information when deciding if there is probable cause to arrest for the crimes charged, as

the information sheds critical light on the reliability of the statements made by the victim

witnesses, who were twin five-year-old children.  Because the children's statements are the basis

of the affidavit of probable cause, and no other interviews of potential eye-witnesses were

conducted before its submission, any reasonable person would know that this information is

important to the children's credibility.  Also, paragraphs (2) and (7), concerning the parents'

financial dispute with Sprouts and the promise of ice cream and a stuffed animal to C.S., are

relevant to the determination of probable cause because this information could, as alleged by

Plaintiff, indicate that the children were being coached.  (Doc. No. 6 at 8.)

The above information is relevant to the probable cause determination and will be

included in a reconstructed affidavit for purposes of a materiality analysis.  See id. at 470, 473

("Where there are improperly omitted or included facts, we have previously instructed district

courts to perform literal, word-by-word reconstructions of challenged affidavits.").

**b.**      **Reconstructed Affidavit for Materiality Analysis**

The next step in the Court's analysis is to reconstruct the affidavit of probable cause with the alleged recklessly omitted information.   Dempsey, 834 F.3d at 475.   The reconstructed affidavit, with both the original information and the additional information described above, would read as follows:[17]

|  |  |
|---|---|
| 1703040917 | On Tuesday, July 25th, 2017, the complainant who is known to the Commonwealth and is available to testify in court, was interviewed inside of Philadelphia Children's Alliance**; however, a formal assessment of competency was not conducted by the interviewer.  Therefore, it is unclear whether complainant is competent to testify in court.** |
|  | ~~and~~ **Complainant** stated while inside the daycare at 604 S. 9th St. the defendant, Duncan Round DOB 03/07/64 pulled his pants down and touched his own penis then let the complainant touch his penis.   Complainant also stated that the defendant put his penis in her mouth, in her butt, and on her face. |
|  | Complainant also stated that the defendant "peed" on her foot, in her mouth and butt, and also in her hand more than one time.  Complainant also stated that the defendant told her to shut up and keep doing it.  Complainant also stated that the defendant touched her vagina with his penis over her clothing.   The complainant states that incidents occurred in the bathroom, library, hallway, ~~and~~ baby room **of** 604 S. 9th St. Philadelphia Pa. 19147 property that is owned by KRMP  604 LLC, **as well as in the presence of her friends and other staff, at her house, and even at a museum in the presence of her parents, brother, and cousins.** |
|  | **Complainant also said that the defendant had removed his clothes in front of the other children at the daycare and they laughed at him, and that the defendant held a knife from the daycare kitchen to her face and tried to kill her, but she ran home.  Complainant said that her parents had promised her ice cream and a stuffed animal after she talked about defendant's penis, and when she was asked to describe the abuse, complainant compared the defendant's genitals to her father's.** |

---

[17]   The additional information is demarcated in bold lettering, and the deleted portions are indicated in lettering with strikes.

**Complainant alleged that the defendant had also sexually assaulted her brother in the presence of another female staff member at the daycare.  When the complainant's mother confronted the female staff member, she told the mother that the children are liars and have lied before.**

The complainant can't give a specific date of the incidents occurring. Complainant did say it happened when she was 5 (complainant is 5 at time of report.)

The complainant started the daycare in July 2015 till July 21st 2017.  **In June 2017, complainant's parents had a financial dispute with the daycare in which they requested a refund of tuition.  When the daycare denied this request, complainant's parents continued to send her and her twin brother to the daycare.**

**On July 25, 2017, complainant underwent a physical examination at Children's Hospital of Pennsylvania.  The results showed that complainant did not present injuries related to sexual abuse.**

**A search warrant of the daycare was executed on July 25, 2017.  At execution of the search warrant, a crime scene unit searched bathroom and library based on complainant's allegations.  Biological material was found in the first-floor bathroom and a sample was taken, but its nature has not yet been identified.**

The offender has several address [sic] linked to his name and business. (BMV) 901 N. Penn St. Unit 01702 Philadelphia Pa. 19123, 171 Cheyenne Trail Medford Lakes NJ. 08055, 1118 E. Montgomery Ave. 19125

This affidavit was reviewed and preapproved by ADA Branwen McNabb on 7/28/17 at 1:00pm.

1703040918      On Tuesday, July 25th, 2017, the complainant who is known to the Commonwealth and is available to testify in court, was interviewed inside of Philadelphia Children's Alliance**.  Complainant is 5 years-old and is the twin brother of the above complainant #1703040917.  At the beginning of the interview, complainant told the interviewer that it is "okay to lie."**

~~and~~ **Complainant** stated while inside the daycare at 604 S. 9th St.

the defendant, Duncan Round DOB 03/07/64 pulled down his
pants and showed the complainant his penis.  The complainant also
stated that the defendant put his penis on his nose ~~and~~ **but not
anywhere else on his body.  Complainant said that during the
alleged abuse the defendant** poked his cheeks with his fingers
**until he said the "password," which was "monkeys."**

**Complainant also said that a female staff member at the
daycare had showed him her genitals and touched his nose and
arms with her hands.  Complainant provided a description of
the female staff member's genitals and drew a picture.
Complainant stated that he would not be going back to the
daycare because his mom told him that the teachers were not
nice.**   The complainant states that incidents occurred in the
bathroom of 604 S. 9th St. Philadelphia Pa. 19147 property that is
owned by KRMP 604 LLC.

The complainant can't give a specific date of the incidents
occurring.  The complainant started the daycare in July 2015 till
July 21st 2017.   **In June 2017, complainant's parents had a
financial dispute with the daycare in which they requested a
refund of tuition after complainant broke his clavicle in the
daycare gym.   When the daycare denied this request,
complainant's parents continued to send him and his twin
sister to the daycare.**

**On July 25, 2017, complainant underwent a physical
examination at Children's Hospital of Pennsylvania.   The
results showed that complainant did not present injuries
related to sexual abuse.**

**A search warrant of the daycare was executed on July 25,
2017.  At execution of the search warrant, a crime scene unit
searched the first-floor bathroom and library based on
complainant's allegations.  Biological material was found in the
first-floor bathroom and a sample was taken, but its nature has
not yet been identified.**

The offender has several address [sic] linked to his name and
business.  (BMV) 901 N. Penn St. Unit 01702 Philadelphia Pa.
19123, 171 Cheyenne Trail Medford Lakes NJ. 08055, 1118 E.
Montgomery Ave. 19125

On 7/28/17 P/O Madgey #4224 spoke to the mother of the
complainant by phone. Mother told P/O Madgey that the
complainant told her that the defendant "peed" in his face and eyes

and he could not see. The complainant did not disclose this
information during his interview.

This affidavit was reviewed and preapproved by ADA Branwen
McNabb on 7/28/17 at 1:00pm.

(See Doc. No. 46-13.)

### c.    Materiality of Omitted Information to Probable Cause

At this step, the question is "whether the recklessly omitted statements, considered in the
context of the affidavit as a whole, were omissions material, or necessary to the finding of
probable cause." Dempsey, 834 F.3d at 477 (citing Wilson, 212 F.3d at 787) (internal quotation
marks omitted).  Thus, to grant summary judgment on Counts I and IV, the Court must find that,
based on the reconstructed affidavit, "no reasonable jury could find facts that would lead to the
conclusion" that Officer Madgey did not have probable cause to arrest Mr. Round.  Wilson, 212
F.3d at 792.  In this case, Mr. Round was arrested for the charged crimes of rape of a child,
involuntary deviate sexual intercourse with a child, contact with a minor, statutory sexual assault,
sexual assault, endangering the welfare of a child, corruption of minors, indecent exposure, and
reckless endangerment of another person.  (See Doc. No. 46-17, Def. Ex. 22.)  But, because a
reasonable jury could find that the reconstructed affidavit lacked probable cause to arrest for
these charges, Defendant's Motion for Summary Judgment will be denied as to Counts I and IV.

As noted above, the critical information in the affidavit in this case was based solely upon
allegations of young victim witnesses that were not corroborated by other witnesses or physical
evidence.[18]   In the Third Circuit, statements of a victim witness are typically sufficient to
establish probable cause in the absence of "[i]ndependent exculpatory evidence or substantial
evidence of [a] witness's own unreliability" that "outweigh[s]" the probable cause that otherwise

---

[18]   Officer Madgey acknowledged at her deposition that, aside from the children's statements,
there was no other physical evidence or witness statements at the time connecting Mr. Round
to the alleged conduct.  (See Doc. No. 46-6, Def. Ex. 5, Madgey Dep. 81:8–83:6.)

exists.  Wilson, 212 F.3d at 790.  While "some unreliability or exculpatory evidence will not fatally undermine probable cause" created by the statements of a victim witness, this notion is true only if probable cause is otherwise established by the statements.  Dempsey, 834 F.3d 457, 477 (3d Cir. 2016)

Child witnesses, however, especially those as young as five years-old, present a unique reliability issue for probable cause determination.  Although the Third Circuit has never directly addressed this issue, several other circuits have found that serious concerns exist when basing probable cause entirely on the uncorroborated statements of young children.

In Wesley v. Campbell, 779 F.3d 421 (6th Cir. 2015), a civil case filed against a police officer, the Sixth Circuit Court of Appeals considered the sufficiency of the probable cause in an arrest warrant with facts similar to the facts here.  In Wesley, a seven-year-old male student accused an elementary school counselor of sexual abuse.  Id. at 424.  After the child made the allegations, the police officers did not question potential witnesses at the school before preparing the arrest warrant affidavit.  Id. at 425.  The affidavit of probable cause only included some information regarding the child's allegations and omitted other information relating to the child's reliability, such as that the location at school where the abuse allegedly occurred was "within the line of sight of other adult staff members," and that the child said during the abuse he saw his "Mom and Dad and . . . sister just outside the window."  Id. at 425, 430 (internal quotation marks omitted).

Reversing and remanding the district court's dismissal of the civil complaint against the police officer for false arrest, the Sixth Circuit held in favor of the accused plaintiff school counselor, explaining that the motion to dismiss should have been denied because the counselor had "alleged facts allowing the fact-finder to infer 'some apparent reason to question [the child's]

reliability.'"   Id. at 430.  Highlighting that the arrest warrant affidavit was based on a seven-year-old's statements, the Sixth Circuit held:

> First, like other circuits, we have expressed serious concern about basing probable cause solely on the uncorroborated allegations of a child.  See, e.g., United States v. Shaw, 464 F.3d 615, 624 (6th Cir. 2006); Stoot v. City of Everett, 582 F.3d 910, 919–20 (9th Cir. 2009); Cortez v. McCauley, 478 F.3d 1108, 1116 (10th Cir. 2007).  In Shaw, we held that a young child's uncorroborated hearsay allegations were too unreliable to form the basis for probable cause.  464 F.3d at 624.  Although Shaw involved hearsay allegations (rather than direct allegations, as is the case here), its underlying reliability rationale remains relevant.  See Diana Younts, Evaluating and Admitting Expert Opinion Testimony in Child Sexual Abuse Prosecutions, 41 DUKE L.J. 691, 697 (1991) ("[S]tudies examining children's suggestibility have found children to be prone to conforming their stories to the beliefs of the questioning adult."), quoted in United States v. LeBlanc, 45 Fed. App'x. 393, 399 n.1 (6th Cir. 2002).  In Stoot, the Ninth Circuit correctly read Shaw to reflect concerns about all uncorroborated allegations by children, not just those involving hearsay.  582 F.3d at 922.

Id. at 430 (collecting cases).

The Sixth Circuit further asserted that, "[i]ndeed, it appears that no federal court of appeals has ever found probable cause based on a child's allegations absent some other evidence to corroborate the child's story."   Id.  Explaining this conclusion, the Sixth Circuit elaborated upon the decisions of other circuits:

> The district court cited two cases for a contrary rule, Lowe v. Aldridge, 958 F.2d 1565 (11th Cir. 1992), and Gerald M. v. Conneely, 858 F.2d 378 (7th Cir. 1988), but in both of those cases, the children's allegations actually enjoyed substantial independent corroboration.  In Shaw, we conducted a survey of cases basing probable cause in part on children's allegations and likewise found, in each instance, "independent evidence corroborating the children's statements."  464 F.3d at 624–26.  Moreover, our independent research has not uncovered a contrary result from another circuit.  Indeed, some cases have expressed heightened concerns about the reliability of child-witnesses' allegations when, as here, there are other indicia of unreliability.  See, e.g., Shaw, 464 F.3d at 624 (holding that child's young age, combined with hearsay nature of statement, made statement insufficient to create probable cause); Stoot, 582 F.3d at 919–20 (holding that child's age, when combined with inconsistent statements and confused identifications, rendered allegations too unreliable to create probable cause).  We are, of course, all too aware of the difficulties facing police investigations into child sexual abuse. We recognize that a child-victim's testimony often plays an

30

important role in prosecuting the perpetrators of this serious and disturbing crime. Nevertheless, we conclude that [the seven year-old's] young age is a factor bearing on the reliability of his accusations and that [the police officer who drafted the affidavit] (and the district court) should have given it appropriate weight.

Id. at 431.

Additionally, the Sixth Circuit observed in Wesley that "the implausibility of a witness's accusations is also germane to determining the existence of probable cause," and that "when a witness's allegations are unlikely, it suggests that he or she may be 'in some fashion mistaken regarding his [or her] recollection.'"  Id.  (citing Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000); Ahlers v. Schebil, 188 F.3d 365 (6th Cir. 1999)).  Finally, the Sixth Circuit noted that "the results of [the child's] medical examination," which showed no evidence of sexual abuse-related injuries, also was material information that should have been considered by the officer. Id. at 432.  Finding the plaintiff had plausibly alleged that the police officer withheld material evidence of the child's unreliability in the affidavit of probable cause, the Sixth Circuit reversed the district court's dismissal of the false arrest claim.  Id. at 437.  Thus, Wesley and case law from other circuits inform this Court that information of the victim witness's reliability is especially crucial to the probable cause analysis when the witness is a young child.

Here, turning to the reconstructed affidavit, there is information that both supports and undermines probable cause.  The information in the original affidavit regarding the children's allegations, in which C.S. identifies specific locations in the daycare, C.S. and A.S. point out specific parts of the body and anatomical descriptions, and C.S. identifies threatening statements of Mr. Round are evidence that would support a finding of probable cause.  (See Doc. No. 46-13.)  Additionally, the fact that biological material was found in one bathroom could also weigh in favor of probable cause, although its contents were unknown at the time.

However, the critical question at the summary judgment stage, when viewing the facts in the light most favorable to Plaintiff as the nonmovant, is whether a reasonable jury could find that the reconstructed affidavit also contains "[i]ndependent exculpatory evidence or substantial evidence of [the children's] own unreliability" that "outweigh[s]" the probable cause otherwise established by the affidavit of probable cause.  Wilson, 212 F.3d at 789.  In this case, a reasonable jury may find for several reasons that the information in the reconstructed affidavit does outweigh the probable cause in the original affidavit.  First, while the original affidavit only included the age of C.S., and not A.S., the reconstructed affidavit demonstrates that both children, who are twin siblings, were five years old.  In their extensive briefings, Defendant has yet to cite a case where the uncorroborated statements of a child as young as five years-old were the sole basis of probable cause.  Surely, then, the children's young age impacts the reliability of their statements.  Further, although there are two alleged victims here and they were interviewed separately, the reliability of their statements is nevertheless impacted by the fact that they are twin brother and sister.

Second, the reconstructed affidavit contains allegations that appear facially implausible, such as that sexual assaults had occurred at the children's home, at a museum, and at various times in the presence of another daycare staff member and even in the presence of the children's family.  As noted in Wesley, "a child's inconsistent identifications cast doubt on [his or] her reliability."  Wesley, 779 F.3d at 432 (citation omitted).  As noted above, the children's inconsistency is supported by information, inter alia, that Ms. Candy said "the children are liars and have lied before" (see Doc. No. 48-1 at 4), and that C.S. said that Mr. Round had removed his clothes in front of the other children at the daycare and they laughed at him (see Doc. No. 53-2, Plff. Ex. 3 at 29–30, 31).  And the fact that C.S.'s competency was never formally assessed

impacts the reliability of her statements, as well as A.S.'s statement during his interview that it is "ok to lie." (See Doc. No. 53-6, Plff. Ex. 53-6.) Moreover, Mrs. Shearn's recent financial dispute with Sprouts and the statements of C.S. that she would be rewarded after the interview with ice cream and a stuffed animal could be interpreted by a jury as indicia of her unreliability. Also, the fact that the children implicated another adult at the daycare in the abuse could indicate that their claims against Mr. Round lacked credibility. Finally, the normal medical examination results of the children could be seen by a jury as exculpatory, as "[s]uch 'negative' or 'inconclusive' results . . . may be exculpatory even where they do not provide definitive evidence on a particular issue," because they "'demonstrate that a number of factors which could link the defendant to the crime do not.'" Simmons v. Beard, 590 F.3d 223, 237 (3d Cir. 2009).

Evaluating the totality of the circumstances, a jury may find that the omitted information in the reconstructed affidavit was material to the probable cause determination and outweighs the inculpatory facts therein. Put differently, because children create heightened issues of reliability, the omitted information was undoubtedly material to the probable cause determination. This notion is supported by statements on the record of Officer Madgey and ADA Elizabeth Fischer, who was assigned to try Mr. Duncan's case on behalf of the City of Philadelphia before it was dismissed. In Officer Madgey's deposition, she acknowledged that "when you have a child at a young age of five years old, they start to mix reality with dreams."[19] (Doc. No. 46-5, Def. Ex. 46-5, Madgey Dep. 104:3–15.)

Additionally, ADA Fischer noted in her deposition that some of C.S.'s statements, such as her "seeing . . . her dad's genitalia" and "the thing about the museum" were statements on which

---

[19] As noted above, this judgment was offered by Madgey in her deposition as to why she did not include the allegations of A.S. against Ms. Storti, the female staff member at Sprouts, in the affidavit.

"we can all kind of agree . . . it's a little out there." (Doc. No. 53-1, Plff. Ex. 2, Fischer Dep. at 43:7–44:4.) She referred also to the children's statements that are now in the reconstructed affidavit as "suspect," "bizarre," and that she found some of the statements not credible because C.S. was not "able to explain the situation." (Id. at 94:3–98:11.) Thus, a reasonable jury could conclude that the reconstructed affidavit shows substantial evidence of the witnesses' own unreliability that, in the mind of a reasonable juror, probable cause to arrest was lacking.

Viewing the record in the light most favorable to Plaintiff, the omitted information was material to the determination that there was a "fair probability" Mr. Round had committed the crimes alleged. Thus, because a triable issue of fact exists regarding whether Officer Madgey had probable cause to arrest Mr. Round, the Court will deny Defendant's Motion for Summary Judgment on Counts I and IV.

## B. Defendant Officer Madgey is Not Entitled to Qualified Immunity At This Stage of the Case

Having concluded that triable issues of fact exist as to whether Defendant arrested Plaintiff without probable cause in violation of the Fourth Amendment, the Court will now determine whether Defendant is entitled to the affirmative defense of qualified immunity. "Qualified immunity protects a government official from liability for civil damages as long as his conduct did not violate clearly established rights of which a reasonable person would have known." Naisha v. Metzger, No. 20-3056, 2021 WL 5632063, at *2 (3d Cir. Dec. 1, 2021) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity analysis is two-fold, as a court must determine: (1) "whether the facts alleged by the plaintiff show the violation of a constitutional right;" and (2) "whether the law was clearly established at the time of the violation." Jefferson v. Lias, 21 F.4th 74, 80 (3d Cir. 2021) (citing Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010)).

### 1. Constitutional Right at Issue

In accordance with the two-part test set forth above, the Court will first examine whether a constitutional violation as alleged by Plaintiff actually exists.  The Court should avoid defining the contours of a constitutional right "at a high level of generality."  Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 638 (3d Cir. 2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)).  Stated differently, the context of each case is crucial to defining the constitutional right at issue.  See Sauers v. Borough of Nesquehoning, 905 F.3d 711, 719 (3d Cir. 2018).  At the summary judgment stage, this "usually means adopting . . . the plaintiff's version of the facts," especially where a dispute of material fact remains.  Scott v. Harris, 550 U.S. 372, 378 (2007).  Broadly delineating the constitutional right, such as merely defining the constitutional right at issue in this case as "the Fourth Amendment right to not be arrested except upon probable cause" would "convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."  Spady, 800 F.3d at 638 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)).

Thus, a court must define the right in the particularized sense "in light of the specific context of the case."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Adopting Plaintiff's version of the facts, the specific context of this case shows that a police officer knowingly or intentionally, or with reckless disregard for the truth, omitted from an affidavit of probable cause for an arrest warrant material information pertaining to children's young age and unreliability, which was known to the officer.  Plaintiff, therefore, has defined the constitutional right at issue to be Mr. Round's "constitutional right to have a disinterested magistrate determine if the facts and circumstances known to Officer Madgey, which were limited to the statements of two twin [five]-year old children who provided fanciful, incongruent, and bizarre accounts of their abuse,

and whose parents had a financial dispute with the accused, were sufficiently trustworthy to support[] probable cause to arrest without any corroborating evidence." (Doc. No. 66 at 32.) In turn, Defendant has framed the constitutional right at issue as "whether it was a 'clearly established' violation of Mr. Round's Fourth Amendment rights for an officer to primarily rely for her determination of probable cause on two separate statements provided by young children that she directly observed being made to an independent, credentialed forensic investigator and which facts then known to the officer did not significantly draw into question the child's trustworthiness." (Doc. No. 67 at 29.)

In the Court's view, adopting Plaintiff's version of the facts, Mr. Round's definition of the constitutional right is better tailored to the context and facts in this case. The issue is not merely that Officer Madgey relied upon the young children's statements to establish probable cause, but instead, that she omitted information from the affidavit that was material to the victim witnesses' reliability. As determined infra, the omitted information, such as the children's many improbable statements, was material due to their status as five-year old children. Defendant's framing of the issue here is inadequate, because when viewing the facts in the light most favorable to Plaintiff, the record does not reflect at this stage that "the facts known to the officer did not significantly draw into question the child's trustworthiness." (Id.)

Therefore, in this case, the Court considers the right at issue to be the constitutional right in a child abuse case to have the determination of probable cause be made by a magistrate judge based upon an affidavit of probable cause from which the affiant officer does not intentionally or recklessly omit material information concerning the child victim's age and unreliability, information that a reasonable affiant would have known a magistrate judge would wish to know. A jury crediting Plaintiff's version of the facts could find that this constitutional right was

violated by Defendant in her omission of known information regarding the children's ages and the numerous indicia of unreliability that were material to the finding of probable cause, as demonstrated above, thus satisfying the first prong of the qualified immunity inquiry.

### 2.   Whether the Right at Issue Was Clearly Established

Moving on to the second inquiry in the two-part test, the Court will now examine whether this constitutional right was clearly established at the time of Defendant's submission of the affidavit of probable cause to the magistrate judge on July 28, 2017.  To determine whether a law was clearly established at the time of the alleged violation:

> We must ask we whether that right was "clearly established" at the time of its alleged violation, i.e., whether the right was sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is an objective (albeit fact-specific) question, where an officer's subjective beliefs . . . are irrelevant.

Jefferson v. Lias, 21 F.4th 74, 81 (3d Cir. 2021) (quoting Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021) (citations and some quotations omitted)).  And once a defendant raises the defense of qualified immunity, the plaintiff bears the initial burden of overcoming that defense by showing that the defendant violated the plaintiff's clearly established right.  Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).  "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions."  Id.

In the Third Circuit's recent decision in Jefferson v. Lias, the court explained what authority may be relied upon in determining whether the constitutional right at issue was clearly established.  The Third Circuit noted:

> With respect to determining whether this right was "clearly established" at the time of the shooting, we first turn "to factually analogous Supreme Court precedent, as well as binding opinions from our own Court."  Peroza-Benitez, 994 F.3d at 165 (citing Fields v. City of Phila., 862 F.3d 353, 361 (3d Cir. 2017)).

37

> Following that, we determine whether there exists a "robust consensus of cases of persuasive authority in the Courts of Appeals." Fields, 862 F.3d at 361 (quoting L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 247–48 (3d Cir. 2016)).  "We may also take into account district court cases, from within the Third Circuit or elsewhere." Peroza-Benitez, 994 F.3d at 165–66.

21 F.4th 74, 81 (3d Cir. 2021).  Further, it is not necessary that there be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741; see Psota v. New Hanover Twp., Civ. No. 20-5004, 2021 WL 6136930, at *28 (E.D. Pa. Dec. 29, 2021).  Thus, a court may rely upon "controlling authority in their jurisdiction at the time of the incident," as well as "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful" to determine whether the right was clearly established. [20]  Wilson v. Layne, 526 U.S. 603, 617 (1999).

Plaintiff has carried his burden by demonstrating that in July 2017, it was clearly established that, in the Fourth Amendment context, an officer in a child abuse case may not intentionally or recklessly omit material information of a child victim witness's age and unreliability from an arrest warrant affidavit that is submitted to a neutral and detached magistrate to assess probable cause, especially information that a reasonable affiant officer would have known a magistrate judge would wish to know.

Plaintiff cites to the United States Supreme Court decisions Johnson v. United States, 333 U.S. 10 (1948) and Franks v. Delaware, 438 U.S. 154 (1978) as demonstrating the longstanding precedent that the constitutional right as described above was "clearly established."  See Johnson, 333 U.S. at 14.  ("The point of the Fourth Amendment, which often is not grasped by

---

[20]  In a recent decision, Dennis v. City of Philadelphia, the Third Circuit stated: "Only controlling precedent in the relevant jurisdiction can place a constitutional question beyond debate."  19 F.4th 279, 288 (3d Cir. 2021).  The court cited for this precept the decision in Wilson v. Layne, 526 U.S. 603, 617 (1999).  However, as noted above, the Supreme Court's decision in Wilson broadens this proposition.

zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often-competitive enterprise of ferreting out crime.")

Further, the Supreme Court held in <u>Franks</u> that where a defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendants request." 438 U.S. 154, 156 (1978). Thus, the fountainhead decision in <u>Franks</u> made clear that "falsehoods are deemed material to the finding of probable cause if the affidavit, 'with the . . . false material set to one side . . . is insufficient to establish probable cause.'" <u>Id.</u> Although <u>Johnson</u> and <u>Franks</u> involve search warrant affidavits, the uniting principle is clear: a magistrate judge, not a police officer, is the ultimate arbiter of whether probable cause exists, and thus an affidavit must not contain reckless falsehoods.[21]

Moreover, under <u>Franks</u>, it is clearly established that a deliberate or reckless falsehood in an affidavit can be either "an affirmative misrepresentation or a material omission." <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997). In <u>Sherwood</u>, the Third Circuit explained that,

---

[21]   Several Courts of Appeals have denied the defense of qualified immunity exists in civil § 1983 cases based upon the holding upon <u>Franks</u>. <u>See</u>, <u>e.g.</u>, <u>Rainsberger v. Benner</u>, 913 F.3d 640, 643 (7th Cir. 2019) (Barrett, J.) (holding, "[b]ecause it is clearly established that it violates the Fourth Amendment 'to use deliberately falsified allegations to demonstrate probable cause,' <u>Franks v. Delaware</u>, 438 U.S. 154, 168, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), Benner is not entitled to qualified immunity" for actions that occurred in 2013); <u>Hunter v. Namanny</u>, 219 F.3d 825, 831 (8th Cir. 2000) (holding, based on <u>Franks</u>, that "a properly reconstructed affidavit would not have provided probable cause to search" and that officers were not entitled to qualified immunity "[b]ecause it is clearly established that the Fourth Amendment requires a warrant application to contain a truthful factual showing of probable cause").

although the process of evaluating a falsehood by omission differs from the literal approach in Franks,[22] the Fourth Amendment prohibition against falsehoods created by omissions is established "[u]nder Franks and its progeny." Id. at 399.  Plaintiff also points to the Third Circuit case of Wilson, cited supra, which held that "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the [witness's positive] identification such that probable cause would not exist."  Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000).  The Wilson decision thus places officers reasonably on "fair notice" that substantial evidence of unreliability could negate probable cause, and thus that omitting this evidence from an affidavit of probable cause creates a falsehood in the affidavit.

Further, in April 2017, prior to the events at issue, the Third Circuit reversed a district court's grant of qualified immunity in a case involving false arrest and malicious prosecution, where the Third Circuit found that the officer's omissions were material to finding probable cause to arrest.  Andrews v. Scuilli, 853 F.3d 690, 703 (3d Cir. 2017).  Citing Wilson and Dempsey, the Third Circuit ultimately concluded that "it would be clear to a reasonable officer that [the officer's] conduct was unlawful in the situation he confronted" and found, based on "well-settled law," that these omissions and misstatements of material facts would be a violation of a Fourth Amendment right that was clearly established at the time he prepared his affidavit in 2012.  Id. at 705.

Most importantly, however, Plaintiff has pointed to numerous cases that demonstrate a "robust consensus of cases of persuasive authority in the Courts of Appeals" that would put an

---

[22]  The Third Circuit noted that "a literal application of the Franks principle would require a court to excise an omission—or, more accurately, the portion of the affidavit reflecting the omission," and clarified that, for alleged omissions, the process is to "remove a falsehood created by an omission by supplying the omitted information to the original affidavit," like the Court has done in the reconstructed affidavit supra.  Sherwood, 113 F.3d at 400.

officer on notice that she may not recklessly omit material information regarding a child witness's age and unreliability in cases involving child abuse allegations, especially when the statements are not corroborated by other evidence.  See Fields, 862 F.3d at 361.

As discussed supra, in 2015, the Sixth Circuit remarked: "Indeed, it appears that no federal court of appeals has ever found probable cause based on a child's allegations absent some other evidence to corroborate the child's story."  779 F.3d 421, 430 (6th Cir. 2015).  In Wesley, a case with similar facts where a seven year-old child's implausible and inconsistent allegations of abuse were the basis of probable cause,[23] the Sixth Circuit held that "it is clearly established that witness allegations fail to sustain probable cause when there is 'apparent reason to question the person's reliability.'"  Id. at 433.  Thus, the court reversed the district court's grant of qualified immunity "because it is clearly established that '[p]olice officers cannot, in good faith, rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court.'"  Id. at 433 (citations omitted).  Further, in another case from the Sixth Circuit, United States v. Shaw, 464 F.3d 615 (6th Cir. 2006), the court held that a child's hearsay allegations were too unreliable to establish probable cause in a sex abuse case, as the court was not aware "of any situation in which the uncorroborated hearsay statement of a child as young as three, standing alone, has been considered sufficient to establish probable cause."[24]  Id. at 624.

Similarly, the Ninth and Tenth Circuits have held prior to the events here that all allegations of children must be carefully scrutinized for reliability.  In Stoot v. City of Everett,

---

[23]   For an in-depth discussion of the facts of Wesley, see Section IV(A)(1)(c).

[24]   Although Shaw involved hearsay statements, the court in Wesley read its holding to apply to direct allegations as "its underlying reliability rationale remains relevant."  Wesley, 779 F.3d at 430.

582 F.3d 910 (9th Cir. 2009), the Ninth Circuit held that the arresting officer "could not rely solely on the uncorroborated, inconsistent statements of this very young child to establish probable cause to arrest . . . . Given [the child's] age [of three] at the time of the purported events and at the time she reported them [at age four], as well as the inconsistencies noted above, [the child's] statements, standing alone, were insufficient to establish probable cause to seize" the alleged abuser.[25] Id. at 921. Further, the Ninth Circuit held that "[i]n cases involving very young child victims, the courts have repeatedly emphasized the need for some evidence in addition to the statements of the victim to corroborate the allegations and establish probable cause." Id. at 920. Also, the Ninth Circuit noted that "[r]equiring officers to conduct some further investigation to corroborate the allegations of a young child victim would not impose any substantial burden on law enforcement." Id. at 921 n.11.

Moreover, in the Tenth Circuit case Cortez v. McCauley, 478 F.3d 1108 (10th Cir. 2007), the court held that the officers were not entitled to qualified immunity on the plaintiff's Fourth Amendment claim because, pointing to the Sixth Circuit's decision in Shaw, the law was clearly established that a double-hearsay statement of a two-year old child was insufficient to establish probable cause and that more information was necessary. While Cortez, like Shaw, involved a child's hearsay allegations, the Court reads these cases "to reflect concerns about all

---

[25]  As noted by Defendant, the Ninth Circuit in Stoot held that the plaintiffs in that case had not cited cases "squarely holding that an officer cannot rely solely on the statements of a child sexual assault victim obtained during a personal interview to establish probable cause" and thus ruled in favor of the officer in that case on the issue of qualified immunity. (See Doc. No. 67 at 33 (citing Stoot, 582 F.3d at 922)).

However, this holding is distinguishable from the instant case because the Ninth Circuit evaluated conduct that occurred in 2003 and 2004, which was prior to the "clearly established" holding in Stoot and the other cases noted herein regarding child victim witnesses. Further, the right at issue in that case was framed differently. See Stoot, 582 F.3d at 913–16. Unlike the instant case, the plaintiffs in Stoot did not allege that the officer had recklessly omitted material fact from an affidavit of probable cause. See generally id.

uncorroborated allegations by children, not just those involving hearsay." Wesley, 779 F.3d at 430; see also Stoot, 582 F.3d at 922.

Due to the "robust consensus of cases" that demonstrates the constitutional right at issue here was clearly established at the time of the alleged violation, Plaintiff has satisfied his burden.[26]

---

[26] There also is well-established law in Pennsylvania to put Officer Madgey, a Philadelphia Police Department officer, on notice that it was unlawful to recklessly omit material information on a child victim's unreliability. In Rosche v. McCoy, the Supreme Court of Pennsylvania held that a trial court abused its discretion in allowing a seven year-old witness to testify about events that occurred three years earlier:

> The presently prevailing rule (in the absence of statute) is that competency is presumed where the child is more than 14 years of age. Under 14 there must be judicial inquiry as to mental capacity, which must be more searching in proportion to chronological immaturity. In the disposition of such a question the courts are confronted by conflicting policies. One is that a party should not be denied justice because reliance necessarily must be placed upon the testimony of a child of tender years. But, on the other hand, experience has informed us that children are peculiarly susceptible to the world of make-believe and of suggestions. Care must be exercised to keep the balance true as between these conflicting claims. . . .

Rosche v. McCoy, 156 A.2d 307, 310 (Pa. 1959). As noted supra, the holding in this case was incorporated into Pennsylvania Rule of Evidence 601(b)'s language regarding incompetency due to the "immaturity" of a person. Pa. R. E. 601, cmt. Further, in Commonwealth v. Delbridge, 855 A.2d 27, 39 (Pa. 2003), in remanding a case for a new competency hearing to be held for child witnesses aged six and four at the time of the alleged sex abuse, the Pennsylvania Supreme Court held:

> The capacity of young children to testify has always been a concern as their immaturity can impact their ability to meet the minimal legal requirements of competency. Common experience informs us that children are, by their very essence, fanciful creatures who have difficulty distinguishing fantasy from reality; who when asked a question want to give the "right" answer, the answer that pleases the interrogator; who are subject to repeat ideas placed in their heads by others; and who have limited capacity for accurate memory.

Id. at 39–40. Although the above cases relate to court testimony, the paramount principle is that child witnesses present heightened credibility issues. Therefore, these Pennsylvania

The burden is now placed on Defendant to show that no genuine issue of material fact remains as to the "objective reasonableness" of Defendant's belief in the lawfulness of her actions.  Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).  Officer Madgey has not met this burden.  In support of her argument that she should be afforded qualified immunity at the summary judgment stage, Madgey points to the fact that the affidavit was reviewed by ADA McNabb before submission to the magistrate.  However, this does not cure the matter because, as the Third Circuit held in Kelly v. Borough of Carlisle, 622 F.3d 248, 256 (3d Cir. 2010):

> [A] police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on lack of probable cause.  That reliance must itself be objectively reasonable, however, because a "wave of the prosecutor's wand cannot magically transform an unreasonable probable cause determination into a reasonable one."  Accordingly, a plaintiff may rebut this presumption by showing that, under all the factual and legal circumstances surrounding the arrest, a reasonable officer would not have relied on the prosecutor's advice.

Id. at 255–56 (quoting Cox v. Hainey, 391 F.3d 25, 34 (1st Cir. 2004)).

Here, based upon all the material omissions in the affidavit to arrest, genuine disputes of material fact exist between the parties about whether Defendant should have relied on ADA McNabb's advice and about what information was known to ADA McNabb prior to approving the affidavit, aside from the information in the affidavit of probable cause.  (See Doc. Nos. 46-2 at 28, 50-1 at 37; see also Doc. No. 46-15, Def. Ex. 20, McNabb Dep.)  At the summary judgment stage, given this dispute, the Court cannot decide whether Defendant's reliance upon ADA McNabb's opinion was objectively reasonable.  Thus, Defendant has not met her burden in order to be cloaked with qualified immunity at this juncture and it will not be applied to her.

---

Supreme Court decisions also placed Officer Madgey on notice that she must exercise care in relying on the statements of young children to establish probable cause.

**V.**     **CONCLUSION**

For the foregoing reasons, Defendant Officer Toni Madgey's Motion for Summary

Judgment (Doc. No. 46) will be denied.  An appropriate Order follows.

45